PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 21-2563

VAMUSA KOSH ISHMAEL,

Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF
AMERICA

On Petition for Review of a Final Order
Of the Board of Immigration Appeals
(BIA No.:  A072-803-370)
Immigration Judge:  Alice Song Hartye

Argued on January 18, 2023

Before: AMBRO*, PORTER, and FREEMAN, <u>Circuit
Judges</u>

---

    *Judge Ambro assumed senior status on February 6,
2023.

(Opinion Filed   May 11, 2023)

Benjamin J. Hooper **(Argued)**
Pennsylvania Immigration Resource Center
294 Pleasant Acres Road
Suite 202
York, PA  17402

Counsel for Petitioner

Lindsay Marshall **(Argued)**
United States Department of Justice
Office of Immigration Litigation
P. O. Box 848
Ben Franklin Station
Washington, DC  20044

Counsel for Respondent


Jonah B. Eaton **(Argued)**
Nationalities Service Center
1216 Arch Street
4th Floor
Philadelphia, PA  19107

Counsel for Amicus-Petitioner

---

OPINION OF THE COURT

---

**AMBRO**, <u>Circuit Judge</u>

Appellant Ishmael Kosh[1] petitions us to review the order from the Board of Immigration Appeals ("BIA") that terminated his asylum status and denied his applications for withholding of removal and protection under the Convention Against Torture. He maintains that the Department of Homeland Security ("DHS") improperly sought to terminate his asylum status in asylum-only proceedings because he first entered the United States under the Visa Waiver Program. Per Kosh, that limiting program no longer applies to him, so he is entitled to complete-jurisdiction removal proceedings instead. In such unlimited proceedings, asylees can raise an adjustment-of-status claim as a defense to removal. We conclude that, if Kosh re-entered the country as an asylee without signing a new Visa Waiver Program form limiting his defenses, he is entitled to complete-jurisdiction proceedings. We thus grant his petition for review, vacate the BIA's decision, and remand for further proceedings consistent with this opinion.

---

[1] Though the caption throughout the immigration proceedings and on appeal to our Court refers to the appellant as "Vamusa Kosh Ishmael," the parties and other documents call him "Ishmael Kosh." We follow the parties' lead and do the same.

## I. BACKGROUND

Kosh, a Liberian citizen, arrived in the United States in 2001 with a false Portuguese passport and requested entry under the Visa Waiver Program ("VWP"). It allows noncitizens from designated countries—including Portugal, but not Liberia—to seek admission for up to 90 days as nonimmigrant visitors without obtaining a visa. 8 U.S.C. § 1187(a). All VWP entrants must sign a Visa Waiver Form in which they "waive[] any right . . . to contest, other than on the basis of an application for asylum, any action for removal of the alien." *Id.* § 1187(b)(2). Signing this waiver form is mandatory each time someone seeks entry through the VWP (even if the individual already signed one on a previous trip). *See* Form I-94W Nonimmigrant Visa Waiver Arrival/Departure Record, U.S. Customs and Border Protection, https://www.cbp.gov/sites/default/files/assets/documents/2018-Mar/700120%20-%20CBP%20Form%20I-94W%20ENG%20%281216%29%20-20FINAL%20%28SAMPLE%29.pdf (last visited Apr. 28, 2023) ("This form must be completed by every nonimmigrant visitor not in possession of a visitor's visa who is a national of one of the countries enumerated in 8 C.F.R. [§] 217."). When Kosh arrived in 2001, he signed upon arrival the waiver as part of his Form I-94W.

Kosh then confessed his Portuguese passport was fake and sought asylum. His matter was referred to an immigration judge ("IJ") pursuant to 8 C.F.R. § 208.2(b), which affords IJs jurisdiction over asylum applications by VWP entrants. Although Kosh ultimately did not qualify for VWP entry because his Portuguese passport was fake, he was still

4

restricted to the VWP's asylum-only proceedings based on his initial application for entry through that program. *See Shkembi v. Att'y Gen.*, 41 F.4th 237, 242 (3d Cir. 2022).[2]

In his asylum application, Kosh claimed he feared returning to Liberia, which at the time had an ongoing civil war. Because his family members were involved with the United Liberation for Democracy political party, they faced significant violence and other dangers. His father had been murdered and Kosh himself was arrested before escaping

---

[2] Unlike Kosh, the noncitizen in *Shkembi* was denied asylum in his limited-jurisdiction removal proceeding following his fraudulent entry under the VWP. *See id.* at 238. Because of that denial, he argued he should not be bound by the VWP's limitations because he was a citizen of a non-VWP-participant country and thus could not have entered properly under that program. *Id.* Our Court's decision in *Shkembi* rejected that argument and made clear that noncitizens who fraudulently enter the United States under the VWP with a fake passport cannot use their own fraud to escape waivers made under that program. *Id.* at 243. In line with this precedent, Kosh was placed appropriately in asylum-only proceedings back in 2001. But *Shkembi* goes no further than that. It does not explain the outer bounds of the waiver. The opinion states neither that the waiver lasts indefinitely nor that any particular action cuts off its applicability. And because Shkembi himself never obtained asylum, the opinion could not instruct on what happens after a noncitizen, like Kosh, is granted asylum and travels legally using his refugee travel documents. Thus the dissent's reliance on *Shkembi* to reason that Kosh should still be bound by the VWP in 2023 without regard to what occurred in the last two decades takes its holding too far.

5

prison and fleeing to the United States. The IJ granted Kosh asylum on March 1, 2001. Over the next few years, he lived in the United States as an asylee, married his wife, and had four children. He left the country in 2005 using his refugee travel document and apparently re-entered later that year.

In 2006, Kosh became involved with a tax fraud conspiracy. He worked as a manager and tax preparer for a sham tax service company that filed false information on its clients' tax returns to increase their refunds. The company then kept the additional refund amounts for itself and passed on a lower amount to its clients. Kosh played a large role in the conspiracy. He was involved for its full duration, was a manager or supervisor to five or more other participants in the criminal activity, recruited customers, and even started a new sham tax preparation business after the initial scheme was shut down.

In 2016, a jury convicted Kosh of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, and filing false and fraudulent income tax returns, in violation of 26 U.S.C. § 7206(2). (He was acquitted of identity theft and one count of filing false and fraudulent income tax returns.) Kosh received concurrent sentences of 52 months and 36 months in prison and was ordered to pay over $239,000 in restitution, jointly and severally, with his co-defendants.

Between his arrest and conviction, the United States Citizenship and Immigration Services ("USCIS") denied Kosh's application to adjust his status to that of a lawful permanent resident. *See* 8 C.F.R. § 1209.2. He was statutorily eligible to apply because he had lived in the United States as an asylee for over a year and, although his criminal convictions

6

could make him ineligible for adjustment of status, DHS can waive that ground of inadmissibility "for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest." 8 U.S.C. § 1159(c). Kosh's denial was "without prejudice to the alien's right to renew the application in [removal] proceedings under part 240 of this chapter." 8 C.F.R. § 1209.2(f).

Then, in 2020, DHS moved to reopen Kosh's old asylum-only proceeding from 2001 to terminate his asylum status, given his criminal conviction. An IJ in Texas granted that motion. He then transferred venue to York, Pennsylvania (based on Kosh's place of confinement) for a hearing on DHS's motion to terminate his asylee status. Kosh, through counsel, moved to terminate the proceedings because the Court had, in his view, inappropriately reopened asylum-only proceedings. He maintained that DHS, instead of reopening his earlier proceedings, should have filed removal proceedings under 8 U.S.C. § 1229a, which would have allowed him to seek adjustment of status. The type of proceeding Kosh sought, which is set out in 8 U.S.C. § 1229a, is also called a "§ 240 proceeding" because the statute was created under section 240 of the Immigration and Nationality Act ("INA").

On September 30, 2020, the IJ denied Kosh's motion to terminate. She held that, because another IJ had previously granted him asylum in limited proceedings, DHS properly moved to reopen those proceedings to terminate his asylee status. Further, she ruled that the Court lacked jurisdiction in the limited proceeding to decide an adjustment-of-status application and could only consider Kosh's application for fear-based relief.

7

Kosh applied for all three types of fear-based relief: asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). On December 21, 2020, after a merits hearing, the IJ terminated Kosh's asylee status and denied his applications for relief. She held that his convictions were aggravated felonies under 8 U.S.C. § 1101(a)(43)(M)(i) (offenses involving fraud or deceit where the loss exceeds $10,000) and (a)(43)(U) (conspiracy to commit an aggravated felony). Kosh was thus no longer eligible for asylum or withholding of removal. 8 U.S.C. § 1158(b)(2)(A)(ii); 8 U.S.C. § 1231(b)(3)(B)(ii). In addition, the IJ denied the CAT application on the merits. Overall, she found that conditions in Liberia had changed since the civil war and that relief was not due based on Kosh's ethnicity, Muslim faith, or alleged threats against him.

Kosh filed a pro se appeal.[3] The BIA rejected his arguments that (1) the IJ erred in denying his motion to terminate and in placing him in asylum-only proceedings, (2) his convictions are neither aggravated felonies nor particularly serious crimes, and (3) he met his burden of proof for CAT relief.[4] Kosh, through new counsel, filed a petition for review and a motion for a stay of removal pending review. Dkt. Nos. 1, 2. Our Court granted the stay. Dkt. No. 16.

---

[3] An attorney entered her appearance after Kosh filed his appeal. While counsel's name appears on the BIA's decision, the administrative record does not include a brief filed by counsel. The BIA addressed the arguments raised by Kosh as a *pro se* litigant.

[4] Kosh does not challenge the denial of CAT relief on appeal to us, though he did challenge it before the BIA.

8

## II.    JURISDICTION AND STANDARD OF REVIEW

The BIA had jurisdiction under 8 C.F.R. § 1003.1(b). We have jurisdiction under 8 U.S.C. § 1252.

We review the final administrative decision of the BIA. *Camara v. Att'y Gen.*, 580 F.3d 196, 201 (3d Cir. 2009). Legal determinations get a fresh review. *Serrano-Alberto v. Att'y Gen.*, 859 F.3d 208, 213 (3d Cir. 2017). For factual determinations, we are bound by findings of fact that are supported by substantial evidence "unless a reasonable adjudicator would be compelled to arrive at a contrary conclusion." *Id.* at 212-13.

## III.    ANALYSIS

Kosh argues we should vacate the BIA's order of removal because (1) the Government did not meet its burden of showing he committed an aggravated felony to terminate his grant of asylum, and (2) it improperly placed him in asylum-only proceedings, depriving him of the opportunity to raise a claim for adjustment of status to lawful permanent resident in defense of removal. Though his first argument fails, if Kosh re-entered the country as an asylee and did not agree to any new waiver of defenses, he is correct that he is entitled to an unrestricted removal proceeding that will allow him to present his claim for lawful permanent residence to an IJ.

### a.  Kosh was convicted of an aggravated felony.

Kosh is ineligible for asylum if his conviction was for "an aggravated felony." 8 U.S.C. §§ 1158(b)(2)(A)(ii) and (b)(2)(B)(i). That includes an offense that "involves fraud or

deceit in which the loss to the victim or victims exceeds $10,000" and "conspiracy to commit [such an] offense." 8 U.S.C. §§ 1101(a)(43)(M)(i) and (U). Kosh concedes his convictions involved fraud but argues the Attorney General has not shown his convicted offenses resulted in victim loss exceeding $10,000.

The Attorney General has the burden to show by clear and convincing evidence that the loss amount specifically "tethered" to Kosh's convictions exceeds $10,000. *Nijhawan v. Att'y Gen.*, 523 F.3d 387, 395-96 (3d Cir. 2008), *aff'd*, 557 U.S. 29 (2009). Because Kosh participated in a conspiracy, the loss must stem from the "specific way" he participated in the scheme. *Rad v. Att'y Gen.*, 983 F.3d 651, 666-67 (3d Cir. 2020).

Here, the IJ and BIA relied on substantial evidence in the record showing that Kosh's specific involvement in the conspiracy resulted in a loss greater than $10,000. The record includes the judgment of the U.S. District Court of the District of Minnesota and the presentence investigation report. The judgment requires Kosh to pay $239,601 in restitution. The presentence investigation report explains that the estimated losses from his participation in the conspiracy are the full $2.5 million because he was a main participant in the scheme. Given that Kosh's participation in the scheme caused losses up to at least $239,601 (the amount of restitution ordered in the judgment against him) and possibly up to $2.5 million (the full loss estimated in the presentence report), his contribution far exceeds the $10,000 threshold. We affirm the IJ and BIA's factual finding that Kosh committed an aggravated felony.

10

### b. Although Kosh committed an aggravated felony, he may still be eligible for adjustment of status to lawful permanent resident.

Because Kosh was convicted of an aggravated felony, he is no longer eligible for asylum. 8 U.S.C. § 1158(b)(2)(A)(ii); (b)(2)(B)(i). However, this conviction does not foreclose a claim for adjustment of status to lawful permanent resident. In general, asylees may apply for an adjustment of status to lawful permanent resident if they meet the statutory requirements contained in 8 U.S.C. § 1159(b). The adjustment statute requires that an asylee has lived in the United States for at least one year and "is admissible." 8 U.S.C. § 1159(b). As explained above, Kosh is inadmissible because he was convicted of an aggravated felony. However, the IJ may waive inadmissibility based on criminal convictions "for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest." 8 U.S.C. § 1159(c). So Kosh could adjust his status if he convinces an IJ that humanitarian purposes or family unity weigh in favor of waiving his inadmissibility.

Kosh meets the statutory requirements to apply for adjustment of status and an accompanying waiver of admissibility. Even though the USCIS already denied his application for adjustment of status, he has the right to renew his application before an IJ. 8 C.F.R. § 1209.2(f). Thus, the question we turn to next—whether DHS can reopen asylum-only proceedings or must initiate complete removal proceedings (where Kosh could renew his adjustment claim)—affects the defenses he can raise and the chances he has to remain in the United States.

11

### c. If Kosh did not waive defenses to removal at his last entry, he is entitled to raise his claim for lawful permanent residence in an unrestricted removal proceeding.

Kosh still faces a hurdle because DHS reopened his asylum-only proceeding from 2001, and in that proceeding the IJ did not have jurisdiction to consider his claim for adjustment of status to lawful permanent resident. The parties dispute whether he is limited to asylum-only proceedings because he previously entered the United States through the VWP, under which he waived his right to challenge his removal on non-asylum grounds. We hold that the VWP no longer applies to an individual who leaves and re-enters the country as an asylee without signing an additional waiver of defenses to removal. Absent a new waiver upon his last entry, Kosh is entitled to raise his adjustment claim before an IJ in unrestricted proceedings.

When Kosh first entered the United States in 2001, he signed the Visa Waiver Form that says, "I hereby waive any rights to review or appeal of an immigration officer's determination as to my admissibility, or to contest, other than on the basis of an application for asylum, any action in deportation." A.R. 773. Because he signed this waiver, his first immigration proceedings were limited to the question of asylum. But now he may be no longer bound by that waiver (or the limited procedures that come with it) if he left the country and re-entered as an asylee without signing a new waiver, not as a VWP entrant, in 2005.[5]

---

[5] Kosh presents two distinct reasons why the waiver does not apply to him: (1) because he left and re-entered, and (2) because he was granted asylum status that displaced his status

12

To understand the scope of the waiver, we interpret the Form I-94W that Kosh signed in 2001 governing the terms of his stay in the United States using familiar contract principles. Although the waiver applies to "any action in deportation," App. 778, we do not interpret that phrase "in a vacuum, but rather must carefully consider the parties' context." *In re New Valley Corp.*, 89 F.3d 143, 149 (3d Cir. 1996); *see also In re Stone & Webster, Inc.*, 558 F.3d 234, 246 (3d Cir. 2009) ("It is a general rule of contract construction to consider the entire instrument." (internal quotation omitted)).

Here, the Form I-94W shows that its terms apply to the time spent in the U.S. starting with the entry at which the form was signed and continuing at most until the next departure. But it does not apply to visits begun by subsequent entries. This is most obviously demonstrated by the form's specific caution that the VWP's restrictions apply "during your visit under this program." App. 773. Also, the form is titled the "Nonimmigrant Visa Waiver **Arrival/Departure** Form," containing a section on arrival and separate section on departure. *Id.* at 772-73 (emphasis added). Finally, the visitor must "[r]etain this permit in [his] possession" for the duration of the visit but "must surrender it when [he] leave[s]," meaning that the visitor no longer has access to the contract or its terms for reference after departing. *Id.* at 773. Reading the waiver provision within its proper context reveals that it could apply only to any action between when the noncitizen arrives under the program and when he first departs.

---

as a VWP entrant. We address the first argument only and express no opinion on the second.

13

Not surprisingly, DHS's own practice aligns with this reading. It requires a VWP entrant to re-sign the I-94W waiver form every time the noncitizen enters the country. *See* Form I-94W Nonimmigrant Visa Waiver Arrival/Departure Record, U.S. Customs and Border Protection, https://www.cbp.gov/sites/default/files/assets/documents/2018-Mar/700120%20-%20CBP%20Form%20I-94W%20ENG%20%281216%29%20-%20FINAL%20%28SAMPLE%29.pdf (last visited Apr. 28, 2023) ("This form must be completed by every nonimmigrant visitor not in possession of a visitor's visa who is a national of one of the countries enumerated in 8 C.F.R. [§] 217."). This repetition would be unnecessary if signing the form once caused the waiver to apply in perpetuity.

To read the waiver provision otherwise would create illogical results. Consider a tourist who visits under the VWP and signs the waiver at age 18. She departs the U.S. and returns to her home country before the 90 days are up. A few years later she attends graduate school in the U.S., after properly obtaining a student visa, and again timely leaves the country before her visa expires. A decade later her U.S. citizen spouse files an immediate relative petition on her behalf. DHS approves the petition, and she is admitted into the U.S. as a lawful permanent resident. After she has lived in the U.S. for years as a lawful permanent resident, DHS decides she is deportable and serves her with a notice referring her to asylum-only proceedings based on the VWP waiver she signed at age 18. Which rules should govern her removal proceedings: the terms of the VWP, those governing her student visa, or the added protections she receives as a lawful permanent resident? It would be illogical to conclude that removal proceedings should be governed by her VWP-entry rather than her later

14

entry as a lawful permanent resident. *See* Amici Br. at 13 (highlighting the same absurdity in a similar hypothetical). Similarly, it would be illogical for Kosh to be bound by a previous VWP entry if he re-entered in 2005 as an asylee and did not re-sign the waiver contained in the I-94W Form.

Thus we hold that Kosh's waiver to contest the basis of his removal applied at most for the duration from his entry in 2001 until his departure in 2005. *Cf. Freeman v. Gonzales*, 444 F.3d 1031, 1036 (9th Cir. 2006) (applying reasonable limits to the waiver and declining to "read the VWP no-contest restriction into the adjustment of status procedural regime, effectively denying VWP applicants the procedural due process all other applicants enjoy, when Congress has not done so explicitly"). When Kosh re-entered in 2005, he became subject to any new agreements he made with DHS at that time. If the terms of his new agreement do not include a waiver of all non-asylum claims, then he is entitled to a complete-jurisdiction proceeding—where he can pursue his adjustment claim—on remand.

Kosh submits that he re-entered in 2005 as an asylee using his refugee travel document and did not re-enter under the VWP. The INA authorizes DHS to provide these travel documents to asylees so that they may travel abroad. *See* 8 C.F.R. § 223.1. When an asylee returns, he must present the document and "shall be accorded the immigration status endorsed in his or her refugee travel document." 8 C.F.R. § 223.3(d)(2)(i). Kosh applied for and received a government-issued refugee travel document listing his status as an "asylee." A.R. 36. And he alleges he used that document, rather than a fake Portuguese passport, to re-enter the United States in 2005.

15

The evidence in the record is short of complete but supports Kosh's description of events. In his application and at the hearing before the IJ, Kosh said he had most recently entered the United States through New York in 2005 as an asylee. He supported his testimony with the record of his departure on May 16, 2005 and a copy of his refugee travel document that lists his "class" as "asylee." A.R. 36. He must have re-entered at some time thereafter because he is currently in the United States, but the record does not include documents showing proof of his re-entry.[6] On remand, the IJ and BIA should consider evidence regarding Kosh's 2005 re-entry and determine whether he was admitted as an asylee or as a VWP entrant. If he was admitted as the former, then his 2001 waiver cannot apply to the subsequent asylee entry, and he is entitled to a complete-jurisdiction removal proceeding.

\* \* \*

For these reasons, we grant Kosh's petition for review, vacate the BIA's decision, and remand for further proceedings consistent with this opinion.

---

[6] DHS provided records as of 2020 that list Kosh's most recent entry date as January 22, 2001. This record cannot be correct because there is evidence Kosh left the country in 2005. The IJ and BIA should require DHS to clarify the record on remand.

16

PORTER, *Circuit Judge*, concurring in part and dissenting in part.

I concur with the majority opinion except for its conclusion in Section III.c that Kosh is entitled to anything more than an asylum-only proceeding.

Kosh argues that although he fraudulently entered the United States under the Visa Waiver Program, he is no longer bound by his VWP waiver because he subsequently left and then re-entered the United States. The majority accepts Kosh's reentry argument, but neither he nor the majority have adduced any authority supporting it. The majority simply asserts that it would be "illogical" to hold Kosh to his VWP waiver. Maj. Op. at 10-13. Under the majority's theory, the mere act of leaving and reentering somehow erased Kosh's fraudulent history and VWP waiver, so he should now be considered an asylee afforded more rights. But no law supports the notion that departure and reentry changed Kosh's status in any way.

Our precedent is not so cavalier about fraudulent VWP entrants. Just last year, we held that:

> [A]n alien's attempt to enter the United States under the VWP by presenting fraudulent travel documents subjects that alien to the terms of the VWP. Those terms limit the alien to asylum-only proceedings. It makes no difference if the alien violated the VWP by overstaying after lawful entry . . . or by using fraudulent documents to enter or to attempt to enter the United States under the VWP. Once the alien has attempted to benefit from the VWP, he or she is bound by its terms.

1

*Shkembi v. Att'y Gen.*, 41 F.4th 237, 243 (3d Cir. 2022). Lacking any textual justification to ignore *Shkembi'*s clear rule statement, I would hold Kosh to the terms of his VWP waiver.

Kosh also argues that the grant of asylum status in 2001 replaced his VWP status entirely, again requiring DHS to place him in removal proceedings. But the "grant" of asylum status no more erased Kosh's prior status as a fraudulent VWP entrant than did his subsequent departure and reentry; it merely added to it. A VWP entrant granted asylum is still a VWP entrant, so if his asylum status is removed, he remains subject to the VWP conditions.

The INA refers to "adjustment" of status when it means to displace one status with another, such as an "adjust[ment] to the status of an alien lawfully admitted for permanent residence." 8 U.S.C. § 1159(b). To "grant" is to give or confer. Black's Law Dictionary (11th ed. 2019). By contrast, to "adjust" an alien's status is to adapt or conform it to a particular use. *Id*. Applying the canon of meaningful variation, we should recognize the distinction between "granting" and "adjusting" an alien's status, as the Ninth Circuit did in *Bare v. Barr*, 975 F.3d 952 (9th Cir. 2020). *See also*, A. Scalia & B. Garner, Reading Law 170 (2012) ("[W]here [a] document has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea.").

In *Bare*, the court considered whether the grant of asylee status replaced or merely added to the petitioner's status as a stowaway. Because "grant" and "adjust" mean different things, the court held that a grant of asylum does not terminate an

2

alien's status as a stowaway. *Id.* at 969-72. The same definitions and logic apply to VWP entrants such as Kosh. The majority does not address the difference between "granting" and "adjusting" immigration status, but the distinction is valid, and we should honor it.

"Entering or attempting to enter the United States under the VWP by using fraudulent documents from a VWP-participating country violates the VWP and subjects that alien to the terms of the VWP, which includes the restriction to asylum-only proceedings." *Shkembi*, 41 F.4th at 242. Because the majority creates an atextual exception to that rule, I respectfully dissent.