PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1667
_____

CARLOS ALBERTO INESTROZA-TOSTA
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(BIA 1:A094-901-655)
Immigration Judge:  Jason L. Pope
_____

Argued
November 1, 2023

Before:  JORDAN, ROTH, and AMBRO, Circuit Judges

(Filed: June 21, 2024)
_____

Anand V. Blakrishnan   [ARGUED]
American Civil Liberties Union
125 Broad Street – 18th Floor
New York, NY 10004

Cheryl Lin  [ARGUED]
Suite 255
338 Palisade Avenue
Jersey City, NJ   07307
        *Counsel for Petitioner*

Merrick B. Garland
Linda Y. Cheng
Jenny C. Lee  [ARGUED]
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC   20044
        *Counsel for Respondent*

Kristin A. Macleod-Ball
Trina A. Realmuto
National Immigration Litigation Alliance et al.
10 Griggs Terrace
Brookline, MA   02446
        *Counsel for Amicus-Petitioners*

_____

OPINION OF THE COURT

_____

JORDAN, *Circuit Judge*.

## I.   INTRODUCTION

Not every statutory filing deadline serves to limit the jurisdiction of federal courts.  Some deadlines are simply claim-processing rules.  The Supreme Court recently held that the exhaustion rule contained in 8 U.S.C. § 1252(d)(1) – a provision governing judicial review of deportation orders – is just such a nonjurisdictional "claim-processing rule." *Santos-Zacaria v. Garland*, 598 U.S. 411, 419 (2023).  Today, we follow the logic of that decision and hold that the 30-day deadline for a would-be immigrant – an "alien," in statutory parlance – to seek judicial review of a "final order of removal" is likewise nonjurisdictional.  That particular deadline is set in 8 U.S.C. § 1252(b)(1).  To understand when the deadline is up, however, it is necessary to know when an order of removal becomes "final."  Our decision today also answers that question.  An order of removal is not final until a decision has been made on the alien's request for withholding of removal.

Applying those conclusions to this case, we rule that the petitioner, Carlos Inestroza-Tosta, timely sought review of the Board of Immigration Appeals' denial of his requests for statutory withholding of removal and relief under the Convention Against Torture.  Nevertheless, his petition fails on the merits.  Although he suffered persecution in the past, he cannot demonstrate a clear probability of future harm based on a protected status or trait, as required by 8 U.S.C. § 1231(b)(3).  Accordingly, while his petition for review was timely, it must be denied.

## II.  BACKGROUND

### A.  Statutory Background

When an alien unlawfully reenters the United States after having been previously removed, "the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed," and "the alien is not eligible and may not apply for any relief[.]"  8 U.S.C. § 1231(a)(5).  In short, he can be removed "at any time."  *Id.*  An alien subject to a reinstated removal order may, however, seek to remain in the United States through withholding of removal if he claims a reasonable fear of persecution or torture if he were sent back to his home country.  When that kind of claim is made, the alien is directed to an asylum officer for a reasonable-fear interview.  8 C.F.R. § 241.8(e).  If the asylum officer finds that the alien "has not established a reasonable fear of persecution or torture," the alien may ask an immigration judge ("IJ") to review that determination.  8 C.F.R. § 208.31(f).  If the IJ disagrees with the asylum officer's determination, the IJ places the alien in "withholding-only proceedings," *Johnson v. Guzman Chavez*, 594 U.S. 523, 530 (2021), and then determines de novo the alien's eligibility for withholding of removal.  8 C.F.R. § 208.31(g)(2).

In that circumstance, the alien may seek two forms of relief that fall under the category of withholding of removal: statutory withholding of removal under 8 U.S.C. § 1231(b)(3) and withholding relief under the Convention Against Torture[1]

---

[1] United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, art. III, Dec. 10, 1984, 1465 U.N.T.S. 85.

4

("CAT relief") (collectively, "withholding-only relief"). To be eligible for statutory withholding of removal, the alien must show that his "life or freedom would be threatened in [his] country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). To be eligible for CAT relief, he must show that "it is more likely than not that he … would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2).

## B. Factual Background

Carlos Alberto Inestroza-Tosta, a native and citizen of Honduras, illegally entered the United States in 2006. The Department of Homeland Security ("DHS") removed him to his home country later that year, but Inestroza-Tosta illegally re-entered the U.S. in 2008. He was removed again. He then came back illegally for a third time in 2010. On March 5, 2021, government agents apprehended Inestroza-Tosta after his arrest in New Jersey for aggravated assault. His prior order of removal was reinstated.

Inestroza-Tosta responded to the threat of a third deportation by claiming that he feared returning to Honduras. Consequently, he was referred to an asylum officer, who determined that he did not have a reasonable fear of persecution or torture if sent to his home country. An IJ disagreed with that assessment, vacated the asylum officer's finding, and placed Inestroza-Tosta in withholding-only proceedings. Inestroza-Tosta then filed an application for statutory withholding of removal and CAT relief with United States Citizenship and Immigration Services ("USCIS").

5

In March 2021, he also applied to USCIS for a so-called "U visa." Such a visa is available to an alien who has "suffered substantial physical or mental abuse as a result of having been a victim" of certain crimes, and who has been helpful to law enforcement in "investigating or prosecuting [the] criminal activity" upon which his petition is based.[2] 8 U.S.C. § 1101(a)(15)(U)(i); *see* 8 C.F.R. § 214.14(b). Inestroza-Tosta claimed to be eligible for a U visa because, two years earlier, he had been violently attacked by three individuals in New Jersey and afterwards helped law enforcement investigate the crime. Hoping he would obtain a U visa, Inestroza-Tosta asked for his withholding-only hearing to be continued, pending a decision on his U visa application. The IJ delayed Inestroza-Tosta's withholding-only hearing four times, the last for technical difficulties.

Eventually, the IJ set a date for the hearing, but Inestroza-Tosta tried to have his withholding-only proceedings administratively closed.[3] The government opposed the

---

[2] In general, a U nonimmigrant can stay in the United States for up to four years after obtaining his U visa. 8 U.S.C. § 1184(p)(6); 8 C.F.R. § 214.14(g)(1). USCIS "has sole jurisdiction over all petitions for U nonimmigrant status." 8 C.F.R. § 214.14(c)(1).

[3] "Administrative closure allows an IJ or the Board [of Immigration Appeals] to temporarily pause removal proceedings and place the case on hold because of a pending alternative resolution or because events outside the control of either party may affect the case." *Arcos Sanchez v. Att'y Gen.*, 997 F.3d 113, 117 (3d Cir. 2021) (internal quotation marks omitted).

request, and the IJ took the government's side.  The IJ doubted that administrative closure was available during withholding-only proceedings because precedent from the Board of Immigration Appeals ("BIA") providing for administrative closure concerned aliens whose removal was actively in litigation, not ones who, like Inestroza-Tosta, had already been ordered to leave.  Furthermore, while the IJ "believe[d] the applicant's pending U visa application … to be particularly strong … considering the injuries that were suffered by the applicant in the aggravated assault attack," the IJ considered the prospect of a visa grant to be too speculative, given USCIS's more than three-month delay in processing Inestroza-Tosta's U visa application.  (A.R. at 23.)  Because closing or continuing the proceedings would "result in undue delay and could result in prolonged detention of this applicant indefinitely[,]" the IJ denied Inestroza Tosta's motion for administrative closure.  (A.R. at 23.)

The IJ then took up Inestroza-Tosta's motions for statutory withholding of removal and CAT relief.  Inestroza-Tosta testified that, in his hometown of Tegucigalpa, Honduras, he had various encounters with members of MS-13, a notorious criminal gang.  Gang members had menaced him and his friends at school, threatening violence if they did not join the gang.  Those threats were made real sometime in 2001 or 2002 when gang members stabbed Inestroza-Tosta in the arm when he rebuffed their recruitment efforts.  He never saw the same individual attackers again.

After completing school, Inestroza-Tosta moved in with his grandfather in Jesus de Otoro to avoid MS-13.  It didn't work.  In June 2007, five other members of MS-13 attacked him, and he was wounded with a machete under his left

shoulder blade because he refused to sell drugs for the gang. He did not know his attackers' names but recognized them as local drug dealers. Inestroza-Tosta was hospitalized for two days. He thinks the police arrested his attackers for a night and released them, but he does not know for sure and never saw them again. Worried that the gang would kill him, Inestroza-Tosta fled to Olancho, a three- to five-hour bus ride away. A year or two later, while in Olancho, his apartment building was shot at, but he was not hit. He believed he was being targeted by MS-13 again. Aside from MS-13, Inestroza-Tosta did not identify anyone else whom he feared.

While the IJ believed Inestroza-Tosta's testimony and considered the 2007 attack to be persecution and torture, he held that Inestroza-Tosta had failed to establish that he was attacked because of his membership in a particular social group ("PSG"), as required by 8 U.S.C. § 1231(b)(3). Nor was his proffered PSG – namely those who are "gang [] violence recipient[s]" – recognized by law. (A.R. at 27.) Likewise, Inestroza-Tosta had not demonstrated an objective fear of future harm. He did not assert that MS-13 was tracking him or would likely target him if he returned to Honduras, fourteen years after they attacked him in Jesus de Otoro. Finally, Inestroza-Tosta could only speculate that MS-13 had shot at his apartment in Olancho. Thus, the IJ denied his motion for statutory withholding of removal.

The IJ also denied his application for CAT relief because Inestroza-Tosta did not demonstrate he would likely be subject to torture if returned to Honduras. In fact, his grandfather was still a resident in Jesus de Otoro and, in an affidavit, did not indicate that the gang was looking for Inestroza-Tosta.

He appealed next to the BIA. He did not file a brief with his appeal, but he filed a Notice of Appeal that claimed five bases for relief as follows:

[1]. The IJ erred in not granting the motion for administrative closure due to the fact that respondent has an extremely significant and weighty application for a U visa pending.

[2]. The IJ erred in denying respondent's application for withholding of removal.

[3]. The IJ erred in concluding that respondent was not a member of a particular social group.

[4]. The IJ erred in denying respondent's application for withholding of removal under the Convention Against Torture.

[5]. Whatever additional issues a review of the administrative record discloses.

(A.R. at 11.)

The BIA dismissed the appeal on March 15, 2022. First, it affirmed the IJ's denial of Inestroza-Tosta's motion for administrative closure because it did not have the "statutory or regulatory authority … to administratively close withholding-only proceedings." (A.R. at 3.) And, even assuming it did have authority, the BIA held that administrative closure would be improper because Inestroza-Tosta's "criminal history negatively affects the likelihood of relief via a U visa[.]" (A.R. at 4.) The BIA then affirmed the IJ's denial of statutory withholding of removal because Inestroza-Tosta had "not

9

established that any harm that he experienced or fears has a nexus to a protected ground," and his proffered PSG, "gang violence recipient[s][,]" was "not cognizable" nor "perceived to exist as a distinct group within Honduran society." (A.R. at 4 (first alteration in original).) Finally, the BIA dismissed Inestroza-Tosta's appeal of the denial of CAT relief as waived because he "ha[d] not identified any specific error of fact or law in the Immigration Judge's denial of this form of protection." (A.R. at 4.)

Inestroza-Tosta filed a petition for review with us on April 12, 2022, less than 30 days after the BIA dismissed his administrative appeal.

## III. DISCUSSION

### A. Jurisdiction[4]

Inestroza-Tosta's petition for review contends that the BIA erred in denying his motions for administrative closure, statutory withholding of removal, and CAT relief. Although both parties agree that we have jurisdiction over Inestroza-Tosta's petition for review, "we have a continuing obligation to assess subject matter jurisdiction *sua sponte* at all stages of the proceeding[.]" *Peace Church Risk Retention Grp. v. Johnson Controls Fire Prot. LP*, 49 F.4th 866, 869 (3d Cir. 2022). Thus, we consider our jurisdiction first. *See Orie v.*

---

[4] The BIA has appellate jurisdiction over immigration judges' decisions in removal proceedings pursuant to 8 C.F.R. §§ 1003.1(b)(3) and 1240.15. Our jurisdiction is a subject of this appeal.

10

*Dist. Att'y Allegheny Cnty.*, 946 F.3d 187, 190 n.7 (3d Cir. 2019); *Castro v. Att'y Gen.*, 671 F.3d 356, 364 (3d Cir. 2012).

We may only review "final order[s] of removal[,]" 8 U.S.C. § 1252(a)(1); *Khouzam v. Att'y Gen.*, 549 F.3d 235, 247 (3d Cir. 2008), and, according to 8 U.S.C. § 1252(b)(1), once a final order of removal is issued, the alien seeking review must file his petition within thirty days. Inestroza-Tosta filed his petition on April 12, 2022, less than thirty days from the BIA's dismissal on March 15, 2022 but just over a year after his removal order was reinstated on March 5, 2021. Hence, we must decide whether the thirty-day deadline set in § 1252(b)(1) is jurisdictional or only a claim-processing rule and then whether the petition was timely filed. If it was timely filed, we can consider the merits of Inestroza-Tosta's petition.[5] In light of the Supreme Court's decision in *Santos-Zacaria v. Garland*, 598 U.S. 411, 416 (2023), we hold that the thirty-day deadline is a claim-processing rule. And we consider the petition to be timely filed. In the end, however, Inestroza-Tosta's petition loses on the merits.

---

[5] Even if it were untimely filed, we could consider the merits if the rule were merely a claim processing one and the government forfeited any opposition to an untimely filing. *Cf. Santos-Zacaria v. Garland*, 598 U.S. 411, 423 (2023) ("Because § 1252(d)(1)'s exhaustion requirement is not jurisdictional, it is subject to waiver and forfeiture.").

11

### 1. Section 1252(b)(1)'s 30-Day Filing Deadline is a Claim-Processing Rule

Our existing precedent holds that the 30-day filing deadline set by 8 U.S.C. § 1252(b)(1) is jurisdictional. *See, e.g.*, *Verde-Rodriguez v. Att'y Gen.*, 734 F.3d 198, 201 (3d Cir. 2013) (relying on *Kolkevich v. Att'y Gen.*, 501 F.3d 323, 337 (3d Cir. 2007)); *Vakker v. Att'y Gen.*, 519 F.3d 143, 146 (3d Cir. 2008) (citing *Stone v. I.N.S.*, 514 U.S. 386, 405 (1995) ("Judicial review provisions … are jurisdictional in nature[.]")); *McAllister v. Att'y Gen.*, 444 F.3d 178, 185 (3d Cir. 2006) (relying on an out-of-circuit case saying the same). But we may depart from our precedent when "intervening legal developments have undercut [its] decisional rationale" such that it "no longer has any vitality or is patently inconsistent with subsequent legal developments." *United States v. Stimler*, 864 F.3d 253, 263 (3d Cir. 2017), *vacated in part on other grounds by United States v. Goldstein*, 902 F.3d 411 (3d Cir. 2018) (internal quotation marks and emphasis omitted); *see also Virgin Islands v. Martinez*, 620 F.3d 321, 327 (3d Cir. 2010) ("While a panel of our Court is bound by the precedential decisions of earlier panels, that rule does not apply when the prior decisions conflict with a Supreme Court decision." (internal quotation marks and brackets omitted)). That is the case here, since our prior jurisdictional rulings are incompatible with recent Supreme Court precedent.

According to 8 U.S.C. § 1252(d)(1), "[a] court may review a final order of removal only if [] the alien has exhausted all administrative remedies available to the alien as

of right[.]"[6]  In *Santos-Zacaria*, the Supreme Court held that the claim exhaustion requirement of § 1252(d)(1) is nonjurisdictional.  598 U.S. at 416.  In so ruling, the Court established an analytical framework for deciding whether a particular prerequisite to judicial review is jurisdictional, "set[ting] the bounds of the 'court's adjudicatory authority[,]'" or is instead a nonjurisdictional claim-processing rule, "govern[ing] how courts and litigants operate within those bounds" to "promote the orderly progress of litigation[.]"  *Id.* (quoting *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)).  As an initial matter, we are to "treat a rule as jurisdictional only if Congress clearly states that it is[,]" with ambiguity leading to the conclusion that the rule is nonjurisdictional.  *Id.* (internal quotation marks omitted).  That is because "[h]arsh consequences attend the jurisdictional brand."  *Id.* (quoting *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1849 (2019)).  For example, a court "cannot grant equitable exceptions to jurisdictional rules"; jurisdiction can be raised at any time during litigation; and jurisdictional rules must be enforced despite a litigant's waiver or forfeiture.  *Id.*  So, we "'leave the ball in Congress' court,' ensuring that courts impose harsh jurisdictional consequences only when Congress unmistakably has so instructed."  *Id.* (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515-16 (2006)).  This is known as the "clear statement rule."  *See, e.g.*, *United States v. Wong*, 575 U.S. 402, 410 (2015).

To determine Congress's intent, the first question is whether filing deadlines, like that under 8 U.S.C. § 1252(b)(1), are "ordinarily … not jurisdictional[.]"  *Santos-Zacaria*, 598

---

[6] We discuss this provision in Section III.B.3., *infra*.

U.S. at 417 (quoting *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 154 (2013)). The Supreme Court has answered that "most time bars are nonjurisdictional."[7] *Wilkins v. United*

[7] While "the taking of an appeal within the prescribed time is mandatory and jurisdictional[,]" *Bowles v. Russell*, 551 U.S. 205, 209 (2007) (internal quotation marks omitted), that only applies to "the transfer of adjudicatory authority from one Article III court to another[,]" *Hamer v. Neighborhood Hous. Servs. of Chi.*, 583 U.S. 17, 25 (2017). We apply the "clear-statement rule" to other appeals not involving the transfer of adjudicatory authority from one Article III court to another. *Id.* at 25 n.9. Our case concerns a petition for review from the BIA, an administrative tribunal created by regulatory authority and acting under a delegation of power from the Attorney General. 8 C.F.R. § 1003.1(a)(1). Thus, we apply the clear statement rule. *Hamer*, 583 U.S. at 25 n.9.

That filing deadlines are ordinarily nonjurisdictional is a common refrain in Supreme Court jurisprudence. *See, e.g.*, *United States v. Wong*, 575 U.S. 402, 410 (2015) (finding Federal Tort Claims Act deadlines, 28 U.S.C. § 2401(b), nonjurisdictional, in part because, "[t]ime and again, [the Court] ha[s] described filing deadlines as quintessential claim-processing rules" (internal quotation marks omitted)); *Boechler, P.C. v. Comm'r*, 596 U.S. 199, 204 (2022) (finding nonjurisdictional the 30-day deadline to petition the Tax Court for review, 26 U.S.C. § 6330(d)(1), because "the text does not clearly mandate [a] jurisdictional reading"); *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 154-55 (2013) (citing cases and stating, "[the Court] ha[s] repeatedly held that filing deadlines ordinarily are not jurisdictional"); *see also T Mobile Ne. LLC v. City of Wilmington*, 913 F.3d 311, 324 (3d Cir. 2019) (finding that the Telecommunications Act of 1996's 30-day

14

*States*, 598 U.S. 152, 158 (2023) (quoting *Wong*, 575 U.S. at 410) (concluding that the Quiet Title Act's statute of limitations, 28 U.S.C. § 2409a(g), is nonjurisdictional). Hence, "we naturally expect the ordinary" nonjurisdictional rule to apply here rather than the "exceptional" jurisdictional one. *Santos-Zacaria*, 598 U.S. at 417 (quoting *Sebelius*, 568 U.S. at 155). That is so "even when the time limit is important (most are) and even when it is framed in mandatory terms (again, most are); indeed, that is so 'however emphatically' expressed those terms may be[.]" *Wong*, 575 U.S. at 410 (internal brackets omitted) (quoting *Henderson v. Shinseki*, 562 U.S. 428, 439 (2011)); *see also Guerra v. Consol. Rail Corp.*, 936 F.3d 124, 133 (3d Cir. 2019) ("Congress used mandatory language [for a filing deadline,] … [b]ut emphatic words are not enough to make a statute jurisdictional."). Instead, "Congress must do something special, beyond setting an exception-free deadline, to tag a [time limit] as jurisdictional[.]" *Wong*, 575 U.S. at 410.

Next, *Santos-Zacaria* instructs, we should consider whether the language of the provision under review "differs substantially from more clearly jurisdictional language in related statutory provisions." 598 U.S. at 418. "Elsewhere in the laws governing immigration cases," but not in § 1252(b)(1), "Congress specified that 'no court shall have jurisdiction' to review certain matters."[8] *Id.* Section

---

filing deadline, 47 U.S.C. § 332(c)(7)(B)(v), is nonjurisdictional, in part because "filing deadlines ordinarily are not jurisdictional" (internal quotation marks omitted)).

[8] In reviewing § 1252(d)(1) in *Santos-Zacaria*, the Supreme Court noted examples of jurisdictional language

15

1252(b)(1) merely states, "With respect to review of an order of removal under subsection (a)(1), the following *requirements* apply: … The petition for review must be filed not later than 30 days after the date of the final order of removal." 8 U.S.C. § 1252(b)(1) (emphasis added). No jurisdictional language is present in the provision even though Congress clearly provided for jurisdictional treatment elsewhere.

Some of *Santos-Zacaria*'s remaining rationales apply here as well. Like § 1252(d)(1), the provision that was held to be nonjurisdictional in that case, § 1252(b)(1) was "enacted at the same time" and was codified "in the same section" as provisions containing "unambiguous jurisdictional terms." *See Santos-Zacaria*, 598 U.S. at 418-19 & n.6 (citing the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-546).[9] The contrast between the text of § 1252(b)(1) and the jurisdictional terms in nearby provisions "show[s] that Congress would have spoken in clearer terms if it intended" for § 1252(b)(1) "to have

_____

elsewhere: 8 U.S.C. §§ 1252(a)(2)(A), (a)(2)(B), (a)(2)(C), (b)(9), (g), 1182(a)(9)(B)(v), (d)(3)(B)(i), (d)(12), (h), (i)(2), 1158(a)(3), 1227(a)(3)(C)(ii), 1229c(f), 1255a(f)(4)(C), and 1225(b)(1)(D). 598 U.S. at 419 n.5.

[9] The Court cites as examples 110 Stat. 3009-546, 3009-577, 3009-582, 3009-597, 3009-607, 3009-612, 3009-638, 3009-639, 3009-649, and 3009-691 (codified at 8 U.S.C. §§ 1182(a)(9)(B)(v), (d)(12), (h), (i)(2), 1158(a)(3), 1225(b)(1)(D), 1227(a)(3)(C)(ii), 1229c(f), 1252(a)(2)(A), (a)(2)(B), (a)(2)(C), (g), 1255a(f)(4)(C)). *Santos-Zacaria*, 598 U.S. at 419 n.6.

16

similar jurisdictional force."  *Id.* at 419 (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 143 (2012)).

*Santos-Zacaria* also all but abrogated *Stone v. I.N.S.*, the Supreme Court case we relied on in holding that § 1252(b)(1)'s filing deadline is jurisdictional.  *See Vakker*, 519 F.3d at 146 (citing *Stone*, 514 U.S. at 405).  In *Stone*, the Supreme Court held that "[j]udicial review provisions … are jurisdictional in nature[.]"  514 U.S. at 405.  But, as *Santos-Zacaria* recognizes, in interpreting precisely that language from *Stone*, jurisdiction "is a word of many, too many, meanings, and courts have more than occasionally used it to describe rules beyond those governing a court's adjudicatory authority."  598 U.S. at 421 (internal quotation marks omitted) (quoting *Fort Bend Cnty.*, 139 S. Ct. at 1848).  *Stone* did not "attend[] to the distinction between 'jurisdictional' rules (as we understand them today) and nonjurisdictional but mandatory ones."  *Id.*  Instead, "*Stone* predates [Supreme Court] cases … that bring some discipline to the use of the term jurisdictional," *id.* (internal quotation marks and bracket omitted), cases that interpret a provision as jurisdictional "only if Congress clearly states that it is[,]" *id.* at 416 (internal quotation marks omitted).

Taken together, these features of § 1252(b)(1) – its status as a simple filing deadline "and its contrast with related, plainly jurisdictional provisions" – make the conclusion that it – like § 1252(d)(1) – is a claim-processing rule "credible enough that we cannot deem it clearly jurisdictional."  *Santos-Zacaria*, 598 U.S. at 419.  Thus, we join the Ninth and Fifth Circuits in holding that § 1252(b)(1) is a nonjurisdictional claim-processing rule.  *See Alonso-Juarez v. Garland*, 80 F.4th 1039, 1047 (9th Cir. 2023) ("[A]lthough we previously relied on *Stone* to hold that § 1252(b)(1) was a jurisdictional rule, that

17

reasoning is now clearly irreconcilable with the Supreme Court's intervening reasoning in *Santos-Zacaria.*" (internal quotations omitted)); *Argueta-Hernandez v. Garland*, 87 F.4th 698, 705 (5th Cir. 2023) ("In *Santos-Zacaria*, the Supreme Court explained that contrary to our previous interpretation, [*Stone*] did not establish that the exhaustion requirement in 8 U.S.C. § 1252(d)(1) was jurisdictional in nature," and so "the 30-day filing deadline is not jurisdictional.").[10]

## 2. Inestroza-Tosta's Petition Was Timely

A petition for review is timely if it is filed within thirty days from the alien's "final order of removal[.]"  8 U.S.C. § 1252(b)(1).  Although the government now concedes that Inestroza-Tosta's petition is timely, it initially contended that his reinstated order constituted the final order of removal and that his petition was untimely because it was filed in April 2022, considerably more than 30 days after that reinstatement in March 2021.  It also argued that the BIA's final decision denying Inestroza-Tosta withholding of removal was not *itself*

---

[10] There is a circuit split on this question.  The Fourth Circuit held that *Santos-Zacaria* was limited to § 1252(d)(1) and did not completely overrule *Stone*.  *Salgado v. Garland*, 69 F.4th 179, 182 n.1 (4th Cir. 2023).  *But see Martinez v. Garland*, 86 F.4th 561, 573 (4th Cir. 2023) (Floyd, J., concurring) (agreeing with our analysis).  The Seventh Circuit recently joined the Fourth, but it did not have occasion to undertake the full analysis we do here.  *F.J.A.P. v. Garland*, 94 F.4th 620, 626 (7th Cir. 2024) (noting that briefs on the question were filed "shortly before oral argument" and acknowledging that the "argument has merit").

18

a "final order of removal" subject to its own thirty-day period to file a petition for review. The government relied on language in two recent Supreme Court cases that lends some limited support to its argument. (Answering Br. at 25-27 (citing *Nasrallah v. Barr*, 590 U.S. 573 (2020) and *Johnson v. Guzman Chavez*, 594 U.S. 523 (2021)).) Nonetheless, the government does not press that earlier position, and we follow our binding precedent in holding that an "order of removal" does not become "final" until an agency decides an alien's request for withholding of removal.

(a) *Nasrallah* and *Guzman Chavez*

The Immigration and Nationality Act ("INA") defines an "[o]rder of deportation"[11] as an "order … concluding that the alien is deportable or ordering deportation." 8 U.S.C. § 1101(a)(47)(A). In *Nasrallah*, the Supreme Court held that a "CAT order is not itself a final order of removal because it is not an order 'concluding that the alien is deportable or ordering deportation.'" 590 U.S. at 582 (quoting 8 U.S.C. § 1101(a)(47)(A)). When an agency grants an alien CAT relief, the Supreme Court explained, it does not disturb the determination that the alien is removable; it only bars the government from sending him to a dangerous country. *Id.*

---

[11] The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 changed the language in § 1252 to "final order of removal" but did not amend the definitional section. *See* Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-607 to 3009-612. We treat the terms "deportation" and "removal" as synonymous. *Khouzam v. Att'y Gen.*, 549 F.3d 235, 247 (3d Cir. 2008).

Thus, the decision *denying* withholding of removal does not "conclud[e] that the alien is deportable" either. *Id.* But the Supreme Court did not examine the concept of finality for purposes of judicial review. It focused solely on the meaning of the term "order of removal."

Later, in *Guzman Chavez*, the Supreme Court did consider finality. 594 U.S. at 533-35. It held that, once an alien's order of removal is reinstated, he is subject to detention under 8 U.S.C. § 1231(a)(2) and may not obtain a bond hearing as authorized by 8 U.S.C. § 1226(a)(2). *Id.* at 526. Section 1231 prescribes detention for aliens during their "removal period," § 1231(a)(2), which begins once "the order of removal becomes administratively final." § 1231(a)(1)(B)(i). The Court said that the reinstatement of the alien's removal order was "administratively final" even if he still had pending withholding-only proceedings. *Guzman Chavez*, 594 U.S. at 533-35. The Court reasoned that withholding-only relief might bar removal to a dangerous country, but "the finality of the order of removal does not depend in any way on the outcome of the withholding-only proceedings." *Id.* at 539. Rather, it was "administratively final" at reinstatement. *Id.* at 534. While *Guzman Chavez*, unlike *Nasrallah*, did examine finality, it did so in the context of detention, and – most importantly – it expressly declined to decide whether its interpretation of administrative finality applied to the phrase "final order of removal" in the context of judicial review under § 1252(b)(1). *Guzman Chavez*, 594 U.S. at 535 n.6.

(b)     Our Precedent is Not Patently Inconsistent with *Nasrallah* and *Guzman Chavez*

*Nasrallah* and *Guzman Chavez* may be in some tension with our precedent, but they are not irreconcilable with it.  We have previously held that a final decision on withholding of removal constitutes the "final order of removal" for aliens subject to reinstated orders of removal.  *Valarezo-Tirado v. Att'y Gen.*, 21 F.4th 256, 261 n.17 (3d Cir. 2021); *Bonilla v. Sessions*, 891 F.3d 87, 90 n.4 (3d Cir. 2018).  Pursuant to those decisions, the BIA's dismissal of Inestroza-Tosta's appeal on March 15, 2022, would constitute his final order of removal, making his petition for review, filed less than a month later, on April 12, timely.  *Nasrallah* and *Guzman Chavez* are not patently inconsistent with our precedent because those two cases did not define what a "final" order of removal is in the context of judicial review under § 1252(b)(1).  *Guzman Chavez*, 594 U.S. at 535 n.6.  Thus, we follow our precedent and hold that, for the purposes of judicial review, the final ruling on withholding of removal is a judicially reviewable "final order of removal" for an alien subject to a reinstated order of removal.[12]

(c)     Assumption of Judicial Review

Another consideration supports this conclusion.  If we were to hold that the order of removal was final at

---

[12] The view expressed here has been adopted by several of our sister Circuits.  *See Argueta-Hernandez v. Garland*, 87 F.4th 698, 705-06 (5th Cir. 2023); *Kolov v. Garland*, 78 F.4th 911, 918-19 (6th Cir. 2023); *F.J.A.P. v. Garland*, 94 F.4th 620,

21

reinstatement rather than at the conclusion of withholding-only proceedings, judicial review of those proceedings would be impossible for aliens with reinstated orders of removal. *See Martinez v. Garland*, 86 F.4th 561, 573 (4th Cir. 2023) (Floyd, J., concurring) ("[W]ithholding and CAT proceedings often take months or even years to conclude – long past the 30-day mark."). The present case proves the point – Inestroza-Tosta did not get a final decision from the BIA until a year after his removal order was reinstated. The promise of judicial review of agency action would be illusory for him and all like him if we accepted the government's argument. That cannot be squared with the "well-settled and strong presumption" that Congress intends agency action, including immigration decisions, to be subject to judicial review, a presumption which "can only be overcome by clear and convincing evidence of congressional intent to preclude judicial review." *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020) (internal quotations marks omitted).

The Administrative Procedures Act ("APA") encourages judicial review. *See* 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action … is entitled

---

637-38 (7th Cir. 2024); *Alonso-Juarez v. Garland*, 80 F.4th 1039, 1048 (9th Cir. 2023); *Arostegui-Maldonado v. Garland*, 75 F.4th 1132, 1141-43 (10th Cir. 2023). But the Second and Fourth Circuits go the other way. *See Bhaktibhai-Patel v. Garland*, 32 F.4th 180, 190 (2d Cir. 2022) (holding that Courts of Appeals do not have jurisdiction to hear a petition for review filed more than thirty days after an alien's order of removal was reinstated); *Martinez v. Garland*, 86 F.4th 561, 570-71 (4th Cir. 2023) (same).

to judicial review thereof."); *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 22 (2018) ("The [APA] creates a … presumption of judicial review for one suffering legal wrong because of agency action." (internal quotation marks and bracket omitted)).  As mentioned, this "strong presumption favoring judicial review of administrative action" may only be overcome if the relevant statute precludes review or if the action is "committed to agency discretion by law[.]" *Weyerhaeuser*, 586 U.S. at 23 (quoting 5 U.S.C. § 701(a)).  The INA defines finality and ties it to a decision by the BIA on removability, 8 U.S.C. § 1101(a)(47)(B),[13] but that definition is best understood as embodying the principle – articulated by the Supreme Court in interpreting the APA – that "administrative orders are final when they mark the 'consummation' of the agency's decision-making process, and when 'rights or obligations have been determined' or when 'legal consequences will flow' from the decision."  *Yusupov v. Att'y Gen.*, 518 F.3d 185, 195 (3d Cir. 2008) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)); *see also Ponce-Osorio v. Johnson*, 824 F.3d 502, 504 (5th Cir. 2016) ("[The INA's] definition of finality … provides little assistance [to aliens with a reinstated order], because DHS regulations confer no means to appeal the reinstatement of a removal order to the BIA.").  So, because "the rights, obligations, and legal consequences of

---

[13] The order [of removal] described under subparagraph (A) shall become final upon the earlier of –
    (i) a determination by the Board of Immigration Appeals affirming such order; or
    (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals.

23

the reinstated removal order are not fully determined until the reasonable fear and withholding of removal proceedings are complete[,]" "the reinstated removal order is not final until the reasonable fear proceedings are complete." *Luna-Garcia v. Holder*, 777 F.3d 1182, 1185-86 (10th Cir. 2015). Accordingly, Inestroza-Tosta's "order of removal" did not become "final" until the BIA denied him withholding-only relief, "consummati[ng]" its decision-making process and causing "legal consequences [to] flow" from the order. *Yusupov*, 518 F.3d at 195.

In sum, we hold that Inestroza-Tosta's petition for review was timely because it was filed less than thirty days from when the BIA denied his request for withholding-only relief, which finalized his reinstated order of removal for the purpose of judicial review.[14] We therefore proceed to consider the merits of his petition.

---

[14] Because we hold that Inestroza-Tosta's petition was timely, we need not determine whether the filing deadline in 8 U.S.C. § 1252(b)(1) is "mandatory" or subject to equitable tolling. *See Guerra v. Consol. Rail Corp.*, 936 F.3d 124, 136 n.6 (3d Cir. 2019) ("[W]e need not decide whether the … filing deadline is a 'mandatory' claim-processing rule that must be applied if raised."); *Alonso-Juarez*, 80 F.4th at 1047 ("Though the parties dispute whether § 1252(b)(1) is subject to equitable tolling if it is a nonjurisdictional rule, we need not and do not decide that dispute today because [the alien]'s petition was timely absent any tolling.").

**B. Merits**

**1. Administrative Closure**[15]

Pursuant to their broad authority to manage their dockets, IJs have the discretion to administratively close immigration proceedings. *Arcos Sanchez v. Att'y Gen.*, 997 F.3d 113, 123 (3d Cir. 2021). As noted earlier, "[a]dministrative closure allows an IJ or the [BIA] to temporarily pause removal proceedings and place the case on hold because of a pending alternative resolution or because events outside the control of either party may affect the case." *Id.* at 117 (internal quotation marks omitted). We have jurisdiction to review denials of administrative closure because the BIA has constrained "by rule" its discretion to do so. *Sang Goo Park v. Att'y Gen.*, 846 F.3d 645, 651 (3d Cir. 2017); *see Hernandez-Castillo v. Sessions*, 875 F.3d 199, 207-08 (5th Cir. 2017) (listing cases). In *Matter of Avetisyan*, 25 I. & N. Dec. 688 (BIA 2012), the BIA gave guidance for IJs exercising their discretion to administratively close proceedings. IJs are to weigh "all relevant factors presented in the case," including:

> (1) the reason administrative closure is sought; (2) the basis for any opposition to administrative closure; (3) the likelihood the respondent will succeed on any petition, application, or other

---

[15] We review decisions denying administrative closure for abuse of discretion. *Arcos Sanchez*, 997 F.3d at 123; *accord Garcia v. Garland*, 64 F.4th 62, 69 (2d Cir. 2023) ("We review the denial of administrative closure for abuse of discretion.").

25

action he or she is pursuing outside of removal proceedings; (4) the anticipated duration of the closure; (5) the responsibility of either party, if any, in contributing to any current or anticipated delay; and (6) the ultimate outcome of removal proceedings (for example, termination of the proceedings or entry of a removal order) when the case is recalendared before the Immigration Judge or the appeal is reinstated before the Board.

*Id.* at 696. In *Matter of W-Y-U-*, 27 I. & N. Dec. 17 (BIA 2017), the BIA clarified that "the primary consideration for an Immigration Judge in determining whether to administratively close or recalendar proceedings is whether the party opposing administrative closure has provided a persuasive reason for the case to proceed and be resolved on the merits."[16]  *Id.* at 20.

---

[16] The power to administratively close proceedings has been through turbulence lately.  In 2018, in *Matter of Castro-Tum*, the Attorney General revoked the power "except where a previous regulation or settlement agreement has expressly conferred it."  27 I. & N. Dec. 271, 283 (A.G. 2018).  A regulation codified *Castro-Tum* two years later.  *Appellate Procedures and Decisional Finality in Immigration Proceedings; Administrative Closure*, 85 Fed. Reg. 81588, 81598 (Dec. 16, 2020).  *But see Arcos Sanchez*, 997 F.3d at 123-24 (holding that *Castro Tum* was wrongly decided and declining to abide by it).  That regulation was subject to a nationwide injunction by *Centro Legal de La Raza v. Exec. Off. for Immigr. Rev.*, 524 F. Supp. 3d 919, 928-29 (N.D. Cal. 2021).  Then, a 2021 Attorney General decision overruled *Castro-Tum*, *Matter of Cruz-Valdez*, 28 I. & N. Dec. 326, 328-

26

Thus, "an irrational departure from that practice might constitute abuse." *Sang Goo Park*, 846 F.3d at 651-52.

Here, "[b]ecause the BIA issued its own opinion, and did not simply adopt the opinion of the IJ, we review … the BIA's decision …. However, to the extent the BIA deferred to or adopted the IJ's reasoning, we also look to and consider the decision of the IJ on those points." *Nelson v. Att'y Gen.*, 685 F.3d 318, 320-21 (3d Cir. 2012). In declining to administratively close Inestroza-Tosta's withholding-only proceedings, the IJ acknowledged *Matter of Avetisyan* and considered a number of factors from that precedent. The BIA affirmed the denial of closure, noting in particular that Inestroza-Tosta's criminal record made it unlikely he would be granted a U visa, so further delay was unwarranted.

Inestroza-Tosta contends that the BIA abused its discretion by failing to fully consider the *Avetisyan* factors. The BIA considered some factors (why closure was sought and the likelihood of success) even though it did not mention

---

29 (A.G. 2021), and a new regulation, effective July 29, 2024, gives IJs an explicit right to administratively close proceedings, codifying the *Avetisyan* factors. *Efficient Case and Docket Management in Immigration Proceedings*, 89 Fed. Reg. 46742, 46789 (May 29, 2024). The currently operative regulation gives IJs the discretion to "take any action consistent with their authorities under the Act and regulations that is appropriate and necessary for the disposition of such cases." 8 C.F.R. § 1003.10(b). We have held that this broad language "confer[s] the general authority to administratively close cases to IJs[.]" *Arcos Sanchez*, 997 F.3d at 124.

*Avetisyan* by name. Inestroza-Tosta's argument "gives too little weight to the BIA's discretionary authority here. The BIA need not evaluate every factor in detail. Rather, it has discretion to 'weigh all *relevant* factors presented in the case.'" *Hernandez-Castillo*, 875 F.3d at 209 (quoting *Avetisyan*, 25 I. & N. Dec. at 696). By considering both a number of the *Avetisyan* factors and the IJ's thorough analysis, the BIA did not "irrational[ly] depart[]" from its practice and did not abuse its discretion. *Sang Goo Park*, 846 F.3d at 651-52.

### 2. Inestroza-Tosta Is Not Eligible for Statutory Withholding of Removal[17]

An alien qualifies for withholding of removal if he can show a "clear probability[,]" *i.e.*, that it is more likely than not "that []he would be persecuted" on the basis of a protected status or trait, such as "race, religion, nationality, membership in a particular social group, [or] political opinion" if he returned home. *Saban-Cach v. Att'y Gen.*, 58 F.4th 716, 724 (3d Cir. 2023) (final alteration in original) (quoting 8 U.S.C. § 1231(b)(3)).

The petitioner is given "a presumption" of future harm based on a protected status or trait if he can demonstrate past

---

[17] When we undertake review of a BIA decision, "[l]egal determinations get a fresh review. For factual determinations, we are bound by findings of fact that are supported by substantial evidence unless a reasonable adjudicator would be compelled to arrive at a contrary conclusion." *Ishmael v. Att'y Gen.*, 77 F.4th 175, 179 (3d Cir. 2023) (citation and internal quotation marks omitted), *cert. denied sub nom. Ishmael v. Garland*, 144 S. Ct. 592 (2024).

persecution because of the same. *Id.* But even if he cannot, he "can still prove future persecution by 'establish[ing] that it is more likely than not that []he would be persecuted on account of [some protected trait] upon removal.'" *Id.* at 725 (first alteration in original) (quoting 8 C.F.R. § 1208.16(b)(2)).

Inestroza-Tosta claims that he experienced persecution because he suffered gang violence and will experience more violence if returned to Honduras. Recall that he claims to be a member of a PSG defined as "gang violence recipient[s]." (A.R. at 100.)[18] To succeed on his withholding of removal claim, he must establish that his PSG is legally cognizable, that he is a member of that group, that he has a well-founded fear of persecution, and that there is "a nexus, or causal link, between the persecution and membership in the" PSG, *S.E.R.L. v. Att'y Gen.*, 894 F.3d 535, 544 (3d Cir. 2018), or, in other words, "that the protected ground was or will be at least one central reason for persecution." *Saban-Cach*, 58 F.4th at 724 (internal quotation marks omitted); *see* 8 U.S.C.

─────────────

[18] Inestroza-Tosta says that the BIA "overlooked" an alternative PSG, "people who resist and protest gangs." (Opening Br. at 14.) But he waived reliance on that PSG before the IJ. During his eligibility hearing, the IJ told Inestroza-Tosta's lawyer, "let's make sure we get them all. … The Court wants to get them all clearly. So gang violence recipient?" (A.R. at 99.) The lawyer said, "Yes, Judge." The IJ said, "And is there a separate … second group?" And the lawyer said, "No, [y]our honor." Thus, Inestroza-Tosta waived reliance on any alternative group definition. *Cf. Matter of W-Y-C-& H-O-B-*, 27 I. & N. Dec. 189, 191-93 (BIA 2018) (stating that a PSG not articulated before the IJ is forfeited on appeal).

29

§ 1158(b)(1)(B)(i); *see also* § 1231(b)(3)(C) (applying the standard of § 1158(b)(1)(B) to statutory withholding of removal).

The BIA denied Inestroza-Tosta withholding of removal because his PSG was "not cognizable" nor "perceived to exist as a distinct group within Honduran society[,]" and because he did not "establish[] that any harm that he experienced or fears has a nexus to a protected ground." (A.R. at 4.) In particular, the IJ found that Inestroza-Tosta did not meet his burden of showing that MS-13 attacked him in Jesus de Otoro in 2007 because of his membership in the PSG and he did not prove that the gang was tracking him or would likely target him if he returned to Honduras fourteen years later.

        (a)    <u>Inestroza-Tosta's PSG, "Gang Violence Recipients," Is Not Legally Cognizable[19]</u>

A PSG is legally cognizable if it is "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *S.E.R.L.*, 894 F.3d at 540. The particularity requirement is definitional, "ensuring that the characteristics defining a group provide a clear benchmark for

---

[19] The cognizability of a petitioner's PSG "presents a mixed question of law and fact[.]" *S.E.R.L. v. Att'y Gen.*, 894 F.3d 535, 543 (3d Cir. 2018). Therefore, we review for substantial evidence the "underlying factual questions concerning the group and the society of which it is a part" and review de novo "the ultimate legal conclusion as to the existence of a particular social group[.]" *Id.*

determining who falls within the group." *Id.* at 548 (internal quotation marks omitted). An asserted PSG must therefore "have discrete and … definable boundaries that are not amorphous, overbroad, diffuse, or subjective so as to provide a clear standard for determining who is a member of it[.]" *Id.* at 552 (citations and internal quotation marks omitted). The social distinction requirement, by contrast, asks "whether the people of a given society would perceive a proposed group as sufficiently separate or distinct[.]" *Id.* at 550.

The IJ found that "gang violence recipient[s]" is not a legally cognizable PSG because it is "defined exclusively by the fact that its members have been subjected to harm." (A.R. at 27 (citing *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 242 (BIA 2014)).) The BIA affirmed on that basis. (A.R. at 4 (citing *Matter of M-E-V-G-*, 26 I. & N. Dec. at 242, and *Matter of W-G-R-*, 26 I. & N. Dec. 208, 215 (BIA 2014)).) We agree. "[P]ersecutory conduct alone cannot define a particular social group." *S.E.R.L.*, 894 F.3d at 549 (brackets omitted) (quoting *Matter of M-E-V-G-*, 26 I. & N. Dec. at 242). For example, in *Radiowala v. Attorney General* we held that "[a] group of persons targeted for their willingness to speak the truth at great risk to themselves" is not legally cognizable because it is "defined by the harm or potential harm posed to its members." 930 F.3d 577, 585 (3d Cir. 2019) (internal quotation marks omitted). A "gang violence recipient" PSG is likewise defined by the harm posed to its members, so it is not cognizable.[20]

---

[20] We recently noted that "in determining whether a PSG exists independently of the persecution suffered, the BIA must consider the PSG in the context both of past persecution and a well-founded fear of [future] persecution." *Avila v. Att'y Gen.*, 82 F.4th 250, 264 (3d Cir. 2023) (internal quotation

Moreover, substantial evidence supports the BIA's finding that "'gang violence recipient[s]' are [not] perceived to exist as a distinct group within Honduran society[.]" (A.R. at 4 (first alteration in original).) Much of Inestroza-Tosta's record evidence concerns gang violence in Honduras, alleged human rights violations perpetrated by its government, and the steps the Honduran government is taking to curb gang violence. On appeal, Inestroza-Tosta does not point to record evidence demonstrating social distinction. He merely contends that "gang violence recipients" are socially distinct because they "are more vulnerable due to their past traumas." (Opening Br. at 14.) But that does not address how Honduran society might see them as a group, and thus he has failed to meet his burden of proof.

marks omitted). While a PSG not independent of the harm cannot serve as a PSG for past persecution, "the shared experience of enduring past persecution may, under some circumstances, support defining a [PSG] for purposes of fear of future persecution[.]" *Lukwago v. Ashcroft*, 329 F.3d 157, 172 (3d Cir. 2003). We have no occasion here to consider that possibility, as Inestroza-Tosta has not advanced such an argument.

(b)    Inestroza-Tosta Was Not Attacked on the Basis of His PSG, and There is No Clear Probability of Future Harm[21]

Substantial evidence supports the BIA's finding that Inestroza-Tosta was not attacked because of his asserted PSG and that he did not demonstrate a clear probability of future harm. Nothing in the record indicates that MS-13 gang members attacked Inestroza-Tosta in 2007 because he was once a "gang violence recipient," and he only speculates that the gang was targeting him again in Olancho. He claims someone shot at his apartment, but he did not see them. *See Hernandez Garmendia v. Att'y Gen.*, 28 F.4th 476, 483 (3d Cir. 2022) (finding no fear of future harm when petitioner "could neither identify the individual who shot his uncle and whether the shooter was in a gang, nor provide a reason why his uncle was shot"). The IJ found that there is no evidence that MS-13 would be looking for him after fourteen years, nor that they would target him because he was once subject to gang violence. Inestroza-Tosta does not address that finding on appeal. His grandfather still lives in Jesus de Otoro and, in a submitted affidavit, did not "specify specific threats against [Inestroza-Tosta] now, or that these individuals that subjected him to the harm in 2007 have been back to threaten him or his family or have been trying to locate him." (A.R. at 29.) *See Hernandez Garmendia*, 28 F.4th at 483-84 ("[Petitioner's] grandfather, his uncle who was shot, and his aunt still reside unharmed in the country. They even reside in the same home where the shooting occurred. These facts undermine [Petitioner]'s claimed fear of future persecution."). Accordingly, substantial evidence supports the BIA's decision that Inestroza-Tosta is not eligible for withholding of removal.

33

### 3. Inestroza-Tosta Did Not Exhaust Administrative Requirements in Asserting His Claim for CAT Relief

Inestroza-Tosta did not file a brief on appeal to the BIA and merely said in his notice of appeal that "[t]he IJ erred in denying respondent's application for withholding of removal under the Convention Against Torture." (A.R. at 11.) Because he did not "identif[y] any specific error of fact or law in the [IJ]'s denial of" CAT relief, the BIA considered Inestroza-Tosta's CAT claim waived. (A.R. at 4 (citing *Matter of Voss*, 28 I. & N. Dec. 107, 108 n.2 (BIA 2020) ("[A]n issue addressed in an Immigration Judge's decision is waived when a party does not challenge it on appeal.")).)

We may review the BIA's decision only if an alien "has exhausted all administrative remedies available to [him] as of right[.]" 8 U.S.C. § 1252(d)(1). "The exhaustion requirement attaches to each particular issue raised by the petitioner." *Castro*, 671 F.3d at 365. So, the issue of exhaustion and the Supreme Court's recent decision in *Santos-Zacaria* are front and center again. That decision established that the exhaustion requirement is a claim-processing rule. 598 U.S. at 417. We have said that the "exhaustion policy is 'liberal.'" *Nkomo v.*

---

[21] "Whether an asylum applicant has demonstrated past persecution or a well-founded fear of future persecution is a factual determination reviewed under the substantial evidence standard." *Voci v. Gonzales*, 409 F.3d 607, 613 (3d Cir. 2005). We also review for substantial evidence whether a petitioner's past or future harm was perpetrated "because of" a protected ground. *Gonzalez-Posadas v. Att'y Gen.*, 781 F.3d 677, 684, 686 (3d Cir. 2015).

*Att'y Gen.*, 986 F.3d 268, 272 (3d Cir. 2021) (quoting Joseph v. Att'y Gen., 465 F.3d 123, 126 (3d Cir. 2006)). "[S]o long as an immigration petitioner makes some effort, however insufficient, to place the [BIA] on notice of a straightforward issue being raised on appeal, he meets the exhaustion requirement." *Id.* (internal quotation marks omitted). But "we will not require the BIA to guess which issues have been presented and which have not." *Lin v. Att'y Gen.*, 543 F.3d 114, 122 (3d Cir. 2008), *abrogated on other grounds by Santos-Zacaria*, 598 U.S. 411.

A petitioner need not file a brief for simple issues and may put the BIA on notice with a notice of appeal. *Yan Lan Wu v. Ashcroft*, 393 F.3d 418, 422 (3d Cir. 2005); *Bhiski v. Ashcroft*, 373 F.3d 363, 368 (3d Cir. 2004). But simply stating "the IJ erred" will seldom be enough to exhaust a claim. *Abdulrahman v. Ashcroft*, 330 F.3d 587, 595 (3d Cir. 2003).

We need not decide whether § 1252(d)(1)'s exhaustion rule is mandatory in the present context because Inestroza-Tosta's CAT claim is forfeited. He failed to exhaust his remedies before petitioning us, as required by 8 U.S.C. § 1252(d)(1). *See Munoz-De Zelaya v. Garland*, 80 F.4th 689, 694 (5th Cir. 2023) ("Regardless of whether § 1252(d)(1)'s claim-processing rule is mandatory in the present context, we decline to reach the arguments that [Petitioners] have failed to exhaust.").

## IV.   CONCLUSION

For the foregoing reasons, we will deny the petition for review.