NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1893
_____

FRANCIELICA GESSICA DA SILVA;
JOAO ROSA PEREIRA-DA SILVA; A. P.-D. S.; D. P.-D. S.,
                                                              Petitioners

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A220-282-033, -034, -035, -036)
Immigration Judge: Nicole Beason-Lane
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 23, 2025

Before: HARDIMAN, AMBRO, and SMITH, *Circuit Judges*

(Filed: January 31, 2025)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

AMBRO, *Circuit Judge*

João Rosa Pereira da Silva and his partner Francielica Gessica da Silva, along with their two minor children, entered the United States unlawfully and subsequently applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). An Immigration Judge (IJ) denied their applications and the Board of Immigration Appeals (BIA) affirmed that decision. Pereira da Silva now petitions us to review the decisions of the BIA and IJ. For the reasons below, we deny his petition. [1]

**I**

Pereira da Silva is a native and citizen of Brazil. In January 2021, while working on a farm, he noticed five men stealing about forty cattle from a neighboring farm. He recognized two of the men as members of a local gang. The next day, police officers approached him and asked about the theft. Pereira da Silva relayed what he had seen and went with them to the police station, where he gave a statement and identified the two men he had recognized by photograph. That night, he received a phone call from someone who told him that "people who talked to the police wake up with worms in their

---

[1]    For simplicity, we refer only to João Rosa Pereira da Silva and his petition. Francielica Gessica da Silva was the lead respondent during removal proceedings, but the substance of the BIA's and IJ's decisions focused on the testimony of Pereira da Silva. He and Gessica da Silva filed separate applications for relief in which they each listed their children as derivative beneficiaries. The children also filed separate applications for asylum, withholding of removal, and CAT protection, but the bases for those claims are the same as those of their parents. Thus, our decision as to one petitioner applies to all petitioners.

mouths." Administrative Record (AR) 41. His partner and boss received similar calls. Pereira da Silva told the police about the threatening calls three times, but "nothing happened." AR 87.

A short time later, three unknown men approached Pereira da Silva while he was walking home. Two of the men slapped and kicked him for about three minutes. They told him that if he continued to speak with the police, they would kill him. Pereira da Silva was uninjured, and he did not report the beating. He continued to receive threatening calls for a short period, but those stopped when he told the callers he would not testify or talk to the police.

About four months after the beating, Pereira da Silva and his family entered the United States. Because they were not lawfully admitted or paroled after inspection by an Immigration Officer, the Department of Homeland Security began removal proceedings. They conceded removability and applied for asylum, withholding of removal, and protection under the CAT.

The IJ rejected the asylum application as untimely because it was filed outside the one-year filing deadline, which Pereira da Silva conceded. AR 43; *see also* 8 U.S.C. § 1158(a)(2)(B). The IJ also denied the application for withholding of removal because, among other things, Pereira da Silva's proposed particular social groups— "eyewitness[es] to gang violence in Brazil," "police informants in Brazil," and "family members of police informants in Brazil"—were not cognizable. AR 44. And the IJ found Pereira da Silva ineligible for CAT protection because he failed to show that he was more

3

likely than not to be tortured if he were removed to Brazil, especially because he had not received any threats since early 2021.

The BIA agreed with the IJ that Pereira da Silva's proposed particular social groups were not cognizable and that he was ineligible for CAT protection, and thus dismissed his appeal.[2] He then timely petitioned us for review.

## II[3]

Pereira da Silva raises two arguments against the BIA's decision. When, as here, "the [BIA] relies on an IJ's legal conclusions and findings of fact, we review [both] the IJ's decision and the [BIA's] decision." *Gonzalez-Posadas v. Att'y Gen.*, 781 F.3d 677, 684 n.5 (3d Cir. 2015). We review factual findings for substantial evidence and legal conclusions de novo. *Yasin v. Att'y Gen.*, 20 F.4th 818, 822 (3d Cir. 2021).

First, Pereira da Silva argues that the BIA and IJ erred in finding him ineligible for withholding of removal. To obtain that relief, he must show that he was persecuted, or that it is more likely than not he will be persecuted in the future, because of a statutorily protected ground, including membership in a particular social group. 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 1208.16(b). To be cognizable, a proposed particular social group must be "(1) composed of members who share a common immutable

---

[2]  Pereira da Silva did not challenge the IJ's denial of his asylum application to the BIA, so that denial is not before us. 8 U.S.C. § 1252(d)(1).

[3]  The BIA had jurisdiction under 8 C.F.R § 1003.1(b)(3). We have jurisdiction under 8 U.S.C. § 1252(a)(1).

characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *S.E.R.L. v. Att'y Gen.*, 894 F.3d 535, 540 (3d Cir. 2018) (citation omitted). The particularity requirement means that the group must have "definable boundaries that are not amorphous, overbroad, diffuse, or subjective so as to provide a clear standard for determining who is a member of it[.]" *Inestroza-Tosta v. Att'y Gen.*, 105 F.4th 499, 518 (3d Cir. 2024) (alteration in original) (citation omitted). And the social-distinction requirement asks "whether the people of a given society would perceive [the] proposed group as sufficiently separate or distinct[.]" *Id.* (second alteration in original) (citation omitted).

The BIA correctly determined that Pereira da Silva's proposed particular social group—"eyewitnesses to gang violence in Brazil"—lacks particularity because "gang violence" is not clearly defined. *Cf. Lizama v. Holder*, 629 F.3d 440, 447 (4th Cir. 2011) (explaining that "criminal histories" is "too broad and amorphous" because it could encompass "offenses ranging in severity from petty theft to first-degree murder"); *Morales v. Garland*, 51 F.4th 553, 556–57 (4th Cir. 2022) (concluding "Salvadorean women who are witnesses to gang criminal activity and targeted because they filed a police report" was insufficiently particular). The same is true for "police informants in Brazil" and "family members of police informants in Brazil" because "informants" is overly broad.

The IJ also properly concluded that Pereira da Silva failed to show that "eyewitnesses to gang violence in Brazil" would be perceived, considered, or recognized

5

in Brazil as a distinct group. He does not direct us to anything challenging that conclusion. Instead, he cites *Guzman Orellana v. Attorney General*, 956 F.3d 171 (3d Cir. 2020), which held that "witnesses who have publicly provided assistance to law enforcement against major Salvadoran gangs" was a socially distinct group within Salvadoran society. *Id.* at 179–80 (emphasizing that "[p]roviding assistance to law enforcement in public, like testifying in court, 'lends itself to societal recognition'" (citation omitted)). But "social distinction involves proof of societal views," and "[w]hat those views are and how they may differ from one society to another are questions of fact." *S.E.R.L.*, 894 F.3d at 556. Just because a specific group is socially distinct in El Salvador does not mean that Brazilian society recognizes a broader, vaguer version of it, and Pereira da Silva points to no evidence in the record suggesting that it does.

Second, Pereira da Silva argues that the BIA and IJ failed to analyze properly his request for CAT relief under the framework we outlined in *Myrie v. Attorney General*, 855 F.3d 509 (3d Cir. 2017).[4] We have explained that a CAT claimant "must satisfy a two-pronged test, showing both that (1) if he returned home, he would be tortured, and (2) the government would acquiesce to that torture." *Llanes-Quinteros v. Att'y Gen.*, 2023

---

[4] In his petition for review, Pereira da Silva places a due-process label on this claim. But he makes no argument related to that sort of violation. *See Freza v. Att'y Gen.*, 49 F.4th 293, 298–99 (3d Cir. 2022) (outlining the requirements for a noncitizen to assert a due-process claim). Instead, he substantively argues—as he did before the BIA— that the IJ erred in concluding that he was ineligible for relief under CAT. We thus consider the substance of Pereira da Silva's arguments.

WL 4116625, at *1 (3d Cir. June 22, 2023) (citing *Myrie*, 855 F.3d at 516–17); *see also* 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1). For the first prong, "an immigration judge must ask: (1A) What harm will the claimant likely suffer if he returns home? and (1B) Would that harm amount to torture?" *Llanes-Quinteros*, 2023 WL 4116625, at *1. For the second prong, the immigration judge must ask: "(2A) How will public officials likely respond to that harm? and (2B) Would that response amount to acquiescence?" *Id.* "Steps 1A and 2A are factual questions" that we review for substantial evidence, whereas "Steps 1B and 2B are legal questions" that we review de novo. *Id.*

The IJ properly analyzed whether it was more likely than not that Pereira da Silva would be tortured if he were removed to Brazil. Under the first prong, she examined the factual evidence in the record, including the threats and beating he experienced in 2021 as well as Pereira da Silva's testimony that neither he nor his family had heard from the unknown callers since early that year. The IJ concluded, as a factual matter, that Pereira da Silva's fear of future harm in Brazil was "merely speculative." AR 46. And she concluded, as a legal matter, that this level of harm did not amount to torture. AR 45–46; *see also* 8 C.F.R. § 1208.18(a)(2) (defining "torture" as "an extreme form of cruel and inhuman treatment"); *id.* § 1208.16(c)(3) (explaining that evidence of past torture shall be considered to determine eligibility for CAT relief). Under the second prong, the IJ concluded that Pereira da Silva "ha[d] not shown that [any future] torture would be committed by or at the instigation of or with the consent or acquiescence of Brazilian public officials." AR 46. She found that "the police were the ones who originally

7

approached [Pereira da Silva] to provide information to them about the incident," and that Pereira da Silva failed to establish "that they were not following through with that investigation." AR 46. And she held on the basis of that finding that the probable future conduct of the Brazilian police in response to Pereira da Silva's feared harm would not amount to acquiescence.

Although the IJ did not signpost each step of her *Myrie* analysis, she was not required to do so.[5] The IJ's factual findings under Steps 1A and 2A—that Pereira da Silva's fear of future harm was speculative and that the Brazilian police would be unlikely to ignore any future harm that befalls him—were supported by substantial evidence. *See Denis v. Att'y Gen.*, 633 F.3d 201, 218 (3d Cir. 2011) (assertions of future torture "based on a chain of assumptions and a fear of what might happen, rather than evidence," cannot demonstrate likelihood of torture). Indeed, Pereira da Silva points to nothing suggesting otherwise. And her legal conclusions under Steps 1B and 2B—that Pereira da Silva's speculative fear of future harm did not amount to torture and that the likely conduct of Brazilian police would not amount to acquiescence—were correct.

\*      \*      \*

For these reasons, we deny the petition for review.

---

[5]   In adopting and affirming the IJ's decision, the BIA also satisfied the requirements of *Myrie*. *See Matter of Burbano*, 20 I. & N. Dec. 872, 874 (BIA 1994) (explaining that when the BIA's final decision is "rendered in a summary fashion[,] … it is simply a statement that the [BIA]'s conclusions upon review of the record coincide with those which the [IJ] articulated in his or her decision").