**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1879
_____

MORLIN ENRIQUE VINDEL-MEDINA,

Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A205-731-623)
Immigration Judge: Kuyomars Q. Golparvar

_____

Argued on March 21, 2024

Before: RESTREPO, PHIPPS and ROTH, <u>Circuit Judges</u>

(Opinion filed: August 16, 2024)

Sean M. Cooper
Alyssa M. Kane          **(ARGUED)**
ALDEA – The People's Justice Center
532 Walnut Street
Reading, PA 19601
          *Counsel for Petitioner*

Rachel L. Browning
Keith I. McManus          **(ARGUED)**
United States Department of Justice
Office of Immigration Litigation

P.O. Box 878
Ben Franklin Station
Washington, DC 20044
          *Counsel for Respondent*


Harrison A. Newman          **(ARGUED)**
Covington & Burling
The New York Times Building
620 Eighth Avenue
New York, NY 10012
          *Court Appointed Amicus Curiae*

---

O P I N I O N[*]

---

**ROTH**, <u>Circuit Judge</u>:

Morlin Enrique Vindel Medina petitions for review of the Board of Immigration

Appeals' (BIA) denial of his claims for withholding of removal under the Immigration and

Nationality Act (INA) and relief under the Convention Against Torture (CAT).  We will

grant his petition as it relates to his INA claim, deny it with respect to his CAT claim, and

remand for further proceedings consistent with this opinion.

### I.    Factual and Procedural Background

Vindel Medina was born in 1995 in La Ceiba, Honduras.  For the first two years of

his life, he lived with his father.  When his father moved to the United States, he moved in

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

2

with his mother, who physically abused him. His paternal grandmother intervened, and when he turned four, he moved in with her, her husband, and her son Antonio (his uncle). Vindel Medina's life at his grandmother's house was peaceful until July 2003, when the Mara 18 gang killed Antonio for refusing to join or work for them. Days later, the gang killed his grandmother because she gave the police information about her son's murderers. Following their deaths, the gang took possession of his grandmother's home and belongings and threatened to kill anyone from Vindel Medina's family if they tried to reclaim their property "because they were snitches."[1] Vindel Medina then moved back in with his mother, who continued abusing him.

The gang began demanding assistance from Vindel Medina when he was thirteen. The gang told him that he "should have been dead, because of what [his] family did to them"; however, so long as he complied with their demands, they would let him live.[2] After about a year, he told the gang he was done, and the gang threatened that unless "he wanted to end up like [his] grandmother and [his] uncle," he needed to continue assisting them.[3] When he refused, the gang beat him and left him for dead.[4]

Hoping to avoid detection, he moved in with his paternal aunt and cousin Javier who lived in a different neighborhood. Around the same time, the gang began "oppressing" Javier, demanding that he pay an extortion tax unless he wanted to "end up like [Vindel

---

[1] AR 365-66.

[2] AR 133. Vindel Medina complied for about a year because "[he] saw what they did to people who refused." AR 369.

[3] AR 423.

[4] Vindel Medina suffered severe injuries to his face, including a blocked nostril that he is still unable to breathe out of.

Medina's] uncle and [his] grandmother."[5]  Javier "tried to get help from the police," but the police made his name public and the gang killed him.[6]  After Vindel Medina attended Javier's funeral, the gang tracked him down at school and shot him in the leg.  As soon as he recovered, he left Honduras to live with his father in the United States.[7]  In November 2018, after being convicted of crimes in Pennsylvania and New Jersey, Vindel Medina unsuccessfully applied for voluntary departure.[8]  He was ultimately removed to Honduras in February 2019.[9]

Upon his return, Vindel Medina moved to a different part of Honduras, where he reunited and began living with his childhood sweetheart Maritza Quijada Nuñez. Nonetheless, in June 2019, four members of the Mara 18 broke into their house while Vindel Medina was at work and attempted to rape Nuñez in an effort to extract information about Vindel Medina's whereabouts.  Vindel Medina did not report this or previous altercations with the Mara 18 to police because the assassinations of his family members made him fear that doing so would be unsafe.  Instead, Vindel Medina and Nuñez relocated to Mexico where they intended to stay permanently.[10]  However, in January 2020, members

---

[5] AR 423.

[6] *Id*.  The gang later tried to recruit Javier's brother Oscar, threatening that if he refused, they would "put holes in his shirt like they did to his brother[.]"  AR 806-807.  Realizing then that the gang had "something against the family," Oscar fled Honduras for the United States.  AR 807.

[7] He left Honduras in October 2012 and entered the United States in December 2012.

[8] He was convicted of retail theft, unlawful possession of a weapon, and criminal trespass.

[9] He was ordered removed to Honduras on January 3, 2019, but was actually removed on February 1, 2019.  He said he did not challenge his removal because he "reasonably believed seven years having passed . . . that he would be safe . . . ."  AR 408.

[10] Both obtained work permits and applied for asylum.

4

of the Zeta cartel kidnapped the couple and held them for a $12,000 ransom. Once Vindel Medina's family in the United States paid up, the cartel brought them to the United States border and released them. Almost immediately, Vindel Medina was arrested and charged with illegal reentry. DHS reinstated his prior removal order.[11] He ultimately pleaded guilty and was sentenced to nine months in federal prison.

After serving his sentence, Vindel Medina was transferred to ICE custody. One day while Vindel Medina was at work, his cellmate—who claimed to be affiliated with the Mara 18 gang—read his legal paperwork detailing his family's issues with the gang back in Honduras. When Vindel Medina returned, his cellmate brutally assaulted him, having "classified [Vindel Medina] as a snitch[.]"[12]

Around the same time, Vindel Medina expressed a fear of returning to Honduras and was referred to an asylum officer for a reasonable fear interview. The asylum officer found his fear was reasonable and referred his case to an IJ for withholding-only proceedings. Vindel Medina then moved for statutory withholding of removal and CAT relief. The IJ disagreed with the asylum officer and denied Vindel Medina's application for relief in its entirety. After Vindel Medina appealed the IJ's decision, the BIA remanded the case back to the IJ for further fact-finding in light of intervening agency precedent. On remand, the IJ again denied Vindel Medina's application. The IJ found that while Vindel Medina had established his membership in a particular social group (his family), the gang mainly persecuted him because he refused to join them—not because of his family

---

[11] DHS reinstated the order on January 27, 2020.
[12] JA 17.

5

membership—and he therefore did not meet the criteria for withholding of removal under the INA. With respect to CAT, the IJ found that Vindel Medina failed to establish that the government had participated in or acquiesced to his torture, or that it was likely to do so in the future. The BIA affirmed the IJ's decision on the same grounds in April 2022. Within thirty days, Vindel Medina filed the instant petition for review, and while his petition was pending, was removed to Honduras.[13]

## II.    Jurisdiction

We have jurisdiction to review "final order[s] of removal."[14] Once a final order of removal is issued, the noncitizen seeking review must file his petition within thirty days.[15] As we recently reaffirmed in *Carlos Alberto Inestroza-Tosta v. Att'y General*, a reinstated order of a removal only becomes "final" for purposes of judicial review at the end of withholding-only proceedings.[16] Vindel Medina filed his petition over two years after his order of removal was reinstated, but within thirty days of the BIA's denial of withholding-only relief.[17] Accordingly, his petition was timely filed, and we thus proceed to consider the merits.

## III.    Discussion[18]

---

[13] He was removed in July 2022.

[14] 8 U.S.C. § 1252(a)(1).

[15] *Id*. § 1252(b)(1).

[16] *See Carlos Alberto Inestroza-Tosta v. Att'y Gen. United States*, 105 F.4th 499, 514 (3d Cir. 2024).

[17] Vindel Medina's prior removal order was reinstated on January 27, 2020. The BIA denied relief on April 29, 2022. Vindel Medina filed the instant petition for review on May 6, 2022.

[18] We review the BIA's denial of withholding of removal and CAT relief for substantial evidence, deferring to the agency's determinations "unless the evidence would compel any

We must determine whether two of the BIA's conclusions are supported by substantial evidence: (1) Vindel Medina's membership in a particular social group (his family) was not a central reason for his past persecution, and (2) Vindel Medina's persecution was not sponsored or acquiesced to by the Honduran government. We conclude that the first is not supported by substantial evidence but the second is.

### A. The BIA erred in concluding that Vindel Medina's family membership was not a central reason for his past persecution.

To qualify for withholding relief under the INA, an applicant must demonstrate "a clear probability" of persecution upon removal—more specifically, that his life or freedom will be threatened on account of his race, nationality, political opinion, or membership in a particular social group.[19] If the applicant establishes past persecution, it is presumed that he will suffer persecution if he returns.[20]

To demonstrate past persecution based on membership in a particular social group, an applicant must establish that (1) the group is a cognizable "social group" within the meaning of 8 U.S.C. § 1231(b)(3)(A), and (2) his membership in the group is "one central

---

reasonable fact finder to reach a contrary result." *Gonzalez-Posadas v. Att'y Gen United States*, 781 F.3d 677, 684 n.5 (3d Cir. 2015) (internal citations omitted). "Although our jurisdiction only extends to final orders of removal and thus only to decisions of the BIA, we also review the IJ's decision to the extent it is adopted, affirmed, or substantially relied upon by the BIA." *Guzman Orellana v. Att'y Gen. United States*, 956 F.3d 171, 177 (3d Cir. 2020) (internal citations omitted).

[19] *Chen v. Gonzales*, 434 F.3d 212, 216 (3d Cir. 2005) (quoting *INS v. Stevic*, 467 U.S. 407, 412 (1984)); *see also* 8 U.S.C. § 1231(b)(3)(A) (setting forth five grounds).

[20] 8 C.F.R. § 1208.16(b)(1)(i).

reason" why he was persecuted.[21] *One* central reason does not mean *the* central reason.[22] Indeed, an applicant may have been persecuted for *multiple* central reasons, but "whether one of those central reasons is more or less important than another is irrelevant."[23]

The BIA affirmed that Vindel Medina successfully established that his family is a cognizable social group, but failed to show that his membership in his family was a "central reason" for his past persecution.[24] While the BIA acknowledged that the Mara 18 had killed multiple members of Vindel Medina's family, and had told Vindel Medina that he "should have been dead [] because of what [his] family did to them," it concluded that "the only reason" the gang persecuted Vindel Medina was because he "resisted and refused to continue" assisting them.[25] That was error.

Although Vindel Medina's resistance to the gang may have been *a* reason for his past persecution, it was not the *only* reason. And while BIA need not have "discuss[ed] every piece of evidence mentioned by [Vindel Medina]," it was not entitled to ignore evidence favorable to him.[26] The BIA did exactly that by disregarding substantial evidence

---

[21] *Gonzalez-Posadas*, 781 F.3d at 685 (3d Cir. 2015) (quoting *Matter of C-T-L-*, 25 I & N. Dec. 341-344-46 (BIA 2010)).

[22] *See Ndayshimiye v. Att'y Gen. United States.*, 557 F.3d 124, 129 (3d Cir. 2009) ("Section 208's use of the phrase '*one* central reason' rather than '*the* central reason' . . . was a deliberate change in the drafting of the provision" and "should not depend on a hierarchy of motivations in which one is dominant and the rest are subordinate."); *see also Gonzalez-Posadas*, 781 F.3d at 685 (3d Cir. 2015) ("For a protected characteristic to qualify as 'one central reason,' it must be an essential or principal reason for the persecution[.]").

[23] *Ndayshimiye*, 557 F.3d at 129.

[24] JA 6-7.

[25] JA 7.

[26] *Huang v. Att'y Gen. United States*, 620 F.3d 372, 388 (3d Cir. 2010); *see also Herrow v. Att'y Gen. United States*, 93 F.4th 107, 113 (3d Cir. 2024) ("The IJ and the BIA may not ignore evidence favorable to the noncitizen.") (cleaned up).

8

that the gang *also* persecuted Vindel Medina because of his family membership—a family that, in the gang's eyes, was made up of "snitches."[27]

Because Vindel Medina successfully established past persecution, it is presumed he will suffer persecution in the future.[28]  We will therefore grant his petition with respect to his INA claim and order that the BIA remand his case to the IJ with instructions to consider whether the government successfully rebutted that presumption by a preponderance of the evidence.[29]

### B.    The BIA correctly concluded that Vindel Medina failed to make out a claim for CAT relief.

To qualify for CAT relief, an applicant must establish that if removed, he would more likely than not be tortured "with the consent or acquiescence of a public official or

---

[27] For example, the gang said that Vindel Medina "should have been dead [] because of what [his] family did to them"—namely, because his grandmother "snitched" to the police about how the gang murdered his uncle.  Substantial evidence suggests the gang let Vindel Medina live despite her "snitching" only because he agreed to help them.  Years later, his Mara 18-affiliated cellmate "classified [him] as a snitch" and assaulted him after reading paperwork detailing his family's troubles with the gang back in Honduras.  JA 17.  The record is devoid of facts to suggest that Vindel Medina ever "snitched"; indeed, as both the IJ and BIA emphasized in their decisions, he never went to the police.  Any reasonable adjudicator would thus be compelled to find that, in addition to his resistance to the gang, his membership in a family of perceived "snitches" put a target on his back.

[28] 8 C.F.R. § 1208.16(b)(1)(i).

[29] To rebut the presumption, the government must demonstrate that either (1) circumstances in Honduras have fundamentally changed, or (2) Vindel Medina could safely relocate to another part of Honduras, and it would be reasonable to expect him to do so.  *See id.* § 1208.16(b)(1)(i)(A)-(B), (b)(1)(ii); *Saban-Cach v. Att'y Gen. United States*, 58 F.4th 716, 724-25 (3d Cir. 2023).  We note here that "safely relocate" is not a synonym for "relocate": whether an applicant can "safely relocate" is an "important condition on the reasonableness of one's fear of future persecution" that cannot be ignored.  *Nsimba v. Att'y Gen. United States*, 21 F.4th 224, 255 (3d Cir. 2021); *see also Saban-Cach*, 58 F.4th at 732-33 (concluding applicant could not reasonably and safely relocate because gang members "recognized and threatened him [even] after he left his hometown.").

another person acting in an official capacity."[30] "To establish acquiescence, an applicant must demonstrate that, prior to the activity constituting torture, a public official was aware of it and thereafter breached the legal responsibility to intervene and prevent it" or was unaware but "willfully blind" to the torture.[31] Here, there is no evidence suggesting public officials consented or acquiesced to the harassment that Vindel Madina suffered at the hands of the Mara 18. Indeed, Vindel Medina concedes he never reported any of it to Honduran police or any other Honduran authority. His reluctance to do so was caused by the lethal actions of the Mara 18 after his grandmother and his cousin Javier reported wrongdoing to the police. There was no evidence that the police would not have acted on Vindal Medina's reports had he made them. As a result, we conclude that the BIA did not err in dismissing Vindel Medina's CAT claim.

## IV.    Conclusion

For the reasons above, we will grant Vindel Medina's petition for review as it relates to his INA claim and remand this case for further proceedings consistent with this opinion. We will affirm the dismissal of Vindel Medina's CAT claim.

---

[30] 8 C.F.R. § 208.18(a)(1).
[31] *Myrie v. Att'y Gen. United States*, 855 F.3d 509, 516 (3d Cir. 2017) (citing 8 C.F.R. § 1208.18(a)(7)).

PHIPPS, *Circuit Judge*, concurring in part and dissenting in part.

Under substantial-evidence review, a federal appellate court may set aside an agency's factual finding only if "the evidence not only *supports* that conclusion, but *compels* it."[1]  For statutory withholding of removal, membership in a particular social group must be one central reason for the claimed persecution.[2]  Here, the BIA did not find that Vindel Medina's membership in his family was one central reason for his persecution; instead, the BIA concluded that the sole central reason for his persecution was his defiance of Mara 18.  In rejecting those findings and granting the petition with respect to his claim for statutory withholding of removal, however, the Majority Opinion asserts that the record compels the conclusion that the gang's belief that Vindel Medina's entire family were 'snitches' was another central reason for Mara 18's persecution of him.  I disagree.

It is undisputed that one central reason for each claimed act of persecution by Mara 18 against Vindel Medina and his relatives was their defiance of Mara 18.  Before the gang had any alleged vendetta against the family, Vindel Medina's uncle was killed "[b]ecause he refused to be part of the gang," Hr'g Tr. 24:4 (Dec. 1, 2021) (A.R. 129), and the gang killed his grandmother for reporting that murder to the police.  Vindel Medina's cousin, Javier, was killed after failing to pay the gang a war tax.  And despite taunts about his family, Mara 18 members began persecuting Vindel Medina only after he stopped working for them.  Even Vindel Medina's assault by a detained Mara 18 member in prison

---

[1] *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992); *see also* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, sec. 306(a)(2), § 242(b)(4)(B), 110 Stat. 3009, 3009–608 (codified at 8 U.S.C. § 1252(b)(4)(B)) (codifying the *Elias-Zacarias* standard and providing that BIA factfinding is "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary"); *Nasrallah v. Barr*, 590 U.S. 573, 583–84 (2020).

[2] *Gonzalez-Posadas v. Att'y Gen.*, 781 F.3d 677, 684–85 (3d Cir. 2015); *see Thayalan v. Att'y Gen.*, 997 F.3d 132, 138 (3d Cir. 2021) (explaining that whether a reason was central is a question of fact).

in the United States occurred only after that gang member had learned information unrelated to Vindel Medina's family before committing the assault.

It may be that family ties played "an incidental, tangential, or superficial role in persecution." *Ndayshimiye v. Att'y Gen.*, 557 F.3d 124, 130 (3d Cir. 2009); *see also Gonzalez-Posadas v. Att'y Gen.*, 781 F.3d 677, 685 (3d Cir. 2015). After all, the Majority Opinion does identify one hearsay statement that Vindel Medina attributed to the gang generally saying that he should be "dead [] because of what [his] family did to them." Maj. Op. 9 n.27 (quoting Hr'g Tr. 28:11 (Dec. 1, 2021) (A.R. 133)). But for family ties to constitute one central reason for Vindel Medina's persecution, it must be either that Vindel Medina and his family members would still have been persecuted in the absence of their defiance of Mara 18, or that Vindel Medina and his relatives would not have been persecuted for defiance alone. *See Inestroza-Tosta v. Att'y Gen.*, 105 F.4th 499, 517 (3d Cir. 2024) (requiring a "causal link" between the particular social group and the persecution (quoting *S.E.R.L. v. Att'y Gen.*, 894 F.3d 535, 544 (3d Cir. 2018))). The record does not *compel* either conclusion.

Accordingly, I respectfully dissent from the granting of the petition in part, and I join the remainder of the opinion denying relief under the Convention Against Torture.