**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-3419
_____

ADALBERTO PINO-PORRAS,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an
Order of the Immigration Judge
(Agency No. 078-494-807)
Immigration Judge:  Ellen Karesh
_____

Argued: March 4, 2025
_____

Before:  MATEY, FREEMAN, and ROTH, *Circuit Judges*

(Filed: June 25, 2025)

Kate L. Fetrow                **[ARGUED]**
Danielle F. Tarantolo
Jodi Ziesemer
NEW YORK LEGAL ASSISTANCE GROUP
100 Pearl Street, 19th Floor
New York, NY 10004

　　*Counsel for Petitioner*

Sanya Sarich Kerksiek        **[ARGUED]**
Jeffrey M. Hartman
UNITED STATES DEPARTMENT OF JUSTICE OFFICE OF IMMIGRATION LITIGATION

P.O. Box 878
Ben Franklin Station
Washington, DC 20044

      *Counsel for Respondent*

Anand V. Balakrishnan
AMERICAN CIVIL LIBERTIES UNION
125 Broad Street, 18th Floor
New York, NY 10004

      *Counsel for Amicus Curiae American Civil Liberties Union*

_____

OPINION[*]

_____

FREEMAN, *Circuit Judge*.

Alex Adalberto Pino Porras petitions for review of an Immigration Judge's order affirming an asylum officer's determination that Pino Porras lacks a reasonable fear of persecution or torture if removed to Ecuador. For the reasons that follow, we will grant the petition, vacate the IJ's order, and remand for further proceedings.

**I**[1]

Pino Porras is a citizen and national of Ecuador. He entered the United States without authorization in 1991. He was placed in removal proceedings in 2001 and was deported in December 2012. He reentered the United States in 2015 and was arrested by immigration officials in 2022.

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

[1] Because we write primarily for the parties, we assume familiarity with the factual and procedural background of this matter.

He then entered the streamlined proceedings for noncitizens who have previously been removed from the United States. *See* 8 U.S.C. § 1231(a)(5); 8 C.F.R. § 241.8(e). His prior removal order was reinstated, which barred him from most forms of relief from removal. 8 U.S.C. § 1231(a)(5). There are only two exceptions to the bar. Those exceptions would apply if Pino Porras had a reasonable fear of (1) persecution on account of a statutorily protected ground in the country to which he would be removed or (2) torture by or with the acquiescence of the government of the country to which he would be removed. 8 C.F.R. § 241.8(e).

Pino Porras claimed that he feared returning to Ecuador, so his case was referred to an asylum officer for a reasonable-fear interview. *See id.* Before the November 2022 interview, an attorney executed a notice of appearance on Pino Porras's behalf. That attorney appeared for part of the reasonable-fear interview, during which Pino Porras asserted his fear of persecution by gangs in Ecuador and torture with the Ecuadorian government's acquiescence. The asylum officer found Pino Porras credible but found that he lacked a reasonable fear of persecution or torture.

Pino Porras appealed the asylum officer's reasonable-fear finding to an IJ on December 1, 2022. By regulation, the IJ had ten days to complete her review. *See* 8 C.F.R. §§ 208.31(g) & 1208.31(g). On December 2, 2022, the Immigration Court scheduled a hearing for the morning of December 6, 2022, and served notice of the hearing on Pino Porras by mail at the custodial facility where he was held. The Court did not serve notice of the hearing on Pino Porras's counsel. Pino Porras received the notice on December 5 and attempted to contact his counsel but was unable to reach her.

3

At the hearing on December 6, the IJ told Pino Porras that "[s]ubject to [her] discretion, [he] may be represented during these proceedings at no cost to the United States government." Admin. Rec. 20. Pino Porras informed the IJ that he wished to be represented by his attorney but was unable to reach her the previous day when he learned of the hearing. The IJ confirmed that Pino Porras's counsel had attended parts of the reasonable-fear interview, but the IJ decided to proceed with the hearing because she "ha[d] not received any communication from an attorney." Admin. Rec. 21. After briefly questioning Pino Porras, the IJ rendered an oral decision. She found that, although Pino Porras is "part of a family and that [he] fear[s] gang activity," he did not establish a nexus between the harm he fears and his membership in a particular social group, nor did he establish government involvement or acquiescence in the torture he fears. Admin. Rec. 24. The IJ issued a written decision the same day. The written decision largely tracked the oral one, with one exception: in the written decision, the IJ found that Pino Porras is "part of a gang and a family." Admin. Rec. 15. After the IJ denied a motion to reconsider her order, Pino Porras petitioned for review by this Court.

## II[2]

We will grant Pino Porras's petition for two reasons. First, the IJ's decision does not withstand substantial evidence review. "An IJ must support her factual determinations with specific, cogent reasons such that her conclusions flow in a reasoned

---

[2] We have jurisdiction under 8 U.S.C. § 1252 to review this timely-filed petition for review of a final order of removal. *Inestroza-Tosta v. Att'y Gen.*, 105 F.4th 499, 515 (3d Cir. 2024).

way from the evidence of record. Failure to provide such support does not pass muster under the substantial evidence rubric." *Valarezo-Tirado v. Att'y Gen.*, 21 F.4th 256, 262 (3d Cir. 2021) (cleaned up). Here, the IJ's decision does not provide a sufficient basis to allow us to conduct meaningful review. To the extent that the decision purports to be based on the evidence of record, it relies on a "fact" that is entirely unsupported by the record—that Pino Porras is part of a gang.[3] Therefore, we will remand for the IJ to provide a record-based decision supported by "a meaningful explanation." *Id.* at 263.

Second, the IJ abused her discretion by failing to give Pino Porras a reasonable opportunity to have his counsel participate in the hearing. At the December 6 hearing, the IJ told Pino Porras that "[s]ubject to [her] discretion," he may be represented by counsel during the proceedings. Admin. Rec. 20. The IJ said Pino Porras was "free to hire anyone of [his] own choosing, but this Court will not appoint or pay for an attorney on [his] behalf," and the IJ confirmed that Pino Porras had been provided with "a list of attorneys and organizations that might be willing to assist [him] for little or no cost." *Id*. These assurances are consistent with Congress's directive that a noncitizen "[i]n any removal proceedings before an immigration judge . . . shall have the privilege of being

---

[3] The dissent deems this harmless error. Dissent at 5–6. The government has not argued that it is. Indeed, the government agrees that a remand is appropriate, due in part to this error. Gov't Br. at 15 ("Remand is required because the IJ did not provide sufficient reasoning for her concurrence with the asylum officer's negative reasonable fear determination, as required by Circuit law, and to correct an apparent factual error in her decision.").

represented (at no expense to the Government) by such counsel authorized to practice in such proceedings, as he shall choose."  8 U.S.C. § 1362.

The parties dispute whether an IJ's review of a reasonable-fear determination for a noncitizen with a reinstated removal order is among the "any removal proceedings" governed by § 1362's privilege.  Only one Court of Appeals has addressed this issue.  The Ninth Circuit Court of Appeals concluded that Congress's use of the phrase "any removal proceedings" encompasses the proceedings at issue here.  *Orozco-Lopez v. Garland*, 11 F.4th 764, 775–77 (9th Cir. 2021).  It reasoned that "the word 'any' has an expansive meaning," *id.* at 776 (quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997)), and that Congress used the phrase "any removal proceedings" to provide "noncitizens . . . an entitlement to counsel at every possible flavor of removal proceedings before an IJ," *id.*  It went on to explain that a noncitizen "alleging persecution in his or her homeland is not actually removed from the United States" unless two determinations are made: (1) that the noncitizen is removable, and (2) that he or she "is not entitled to any relief from removal."  *Id.* (internal quotation marks omitted).  *Id.*  The phrase "any removal proceedings" applies both to proceedings governing both determinations.  *Id.* (noting that the first determination may be mechanical but the second is often complex and fact-intensive).  We agree with the Ninth Circuit's persuasive reasoning.[4]

---

[4] The dissent contends that *Orozco-Lopez* conflicts with *Nasrallah v. Barr*, 590 U.S. 573 (2020), and *Johnson v. Guzman-Chavez*, 594 U.S. 523 (2021).  Dissent at 12 n.18.  But neither *Nasrallah* nor *Guzman-Chavez* addressed the scope of "any removal proceedings" as used in § 1362.

When § 1362's privilege attaches, we assess "the facts and circumstances of each case" to determine whether the IJ abused her discretion by not permitting counsel to participate. *Freza v. Att'y Gen.*, 49 F.4th 293, 299 (3d Cir. 2022) (quoting *Ponce-Leiva v. Ashcroft*, 331 F.3d 369, 377 (3d Cir. 2003)). Here, the IJ knew that Pino Porras's counsel participated in the reasonable-fear interviews, and Pino Porras informed the IJ that he had only learned of the hearing the day before and had been unable to contact his counsel. And the record shows that counsel was not served with notice of the hearing before the IJ. Moreover, five days of the allotted ten-day period remained before the IJ

---

*Nasrallah* held that orders denying requests for withholding of removal pursuant to the Convention Against Torture ("CAT") do not merge with final orders of removal, thus the judicial-review bar that governs the latter does not govern the former. *Nasrallah*, 590 U.S. at 582–83. As is "typical[]," *id.* at 585, the petitioner in *Nasrallah* applied for CAT relief during his standard removal proceedings, *id.* at 575–77, when he had the privilege to be represented by counsel under a more specific provision of the INA, *see* 8 U.S.C. § 1229a(b)(4)(A). So *Nasrallah* has no bearing on the question of § 1362's scope.

*Guzman-Chavez* addresses circumstances closer to Pino Porras's, but it still does not govern the question before us. There, noncitizens with reinstated removal orders were detained while pursuing withholding of removal. They challenged what process they were due during their detention. In that context, the Court distinguished reinstatement proceedings from "standard removal proceedings." *Guzman-Chavez*, 594 U.S. at 531. As it did in *Nasrallah*, it noted that a noncitizen "subject the standard removal process"—*i.e.*, the process under 8 U.S.C. § 1229a—"typically applies for withholding during the course of his removal proceedings." *Id.* In the next sentence, the Court stated, "But because an alien subject to a reinstated order of removal will not have any removal proceedings, the process begins for him only if he expresses a fear to DHS of returning to the country of removal." *Id.* Naturally read, the Court was referring to the lack of any *standard* removal proceedings—not the lack of "any removal proceedings."

Finally, the dissent contends that "any removal proceedings" can be read to encompass standard removal proceedings under § 1229a and expedited removal proceedings for non-citizens convicted of certain crimes under § 1228, but not IJ review of reasonable-fear determinations. *See* Dissent at 10–11. We decline to adopt this reading in light of Congress's broad textual command and because, as discussed above, any application for withholding of relief must be decided prior to effectuating a removal.

7

was due to render her decision. In these circumstances, the IJ's failure to afford Pino Porras an opportunity to contact his counsel constitutes an abuse of discretion. *Cf. Chlomos v. INS*, 516 F.2d 310, 313–14 (3d Cir. 1975) ("We disapprove of an administrative agency scheduling a hearing for a person who it knows is represented by counsel without giving reasonable notice to the lawyer.").

\* \* \*

For the foregoing reasons, we will grant the petition for review, vacate the IJ's decision, and remand for further proceedings consistent with this opinion.[5]

---

[5] The government's motion to remand is denied as moot.

MATEY, *Circuit Judge*, dissenting.

There was a short path to resolving this petition. Over two years ago, Alex Adalberto Pino Porras asked to return this case to the Justice Department for a second look at his claimed fear of returning to Ecuador. The Attorney General agreed and moved to remand. I would have granted that motion, so I respectfully dissent. I also explain why the decision of the Immigration Judge is supported by substantial evidence and Pino Porras was not entitled to counsel during his reasonable-fear hearing.

## I.

Pino Porras illegally entered the United States by 1991. A decade later, he was found removable and allowed to self-deport. But Pino Porras never left. Another decade later, still in the United States, he was convicted of possessing stolen property and driving under the influence of alcohol. He was finally removed to Ecuador in 2012. But he illegally returned in 2015 and again drove drunk. Since then, he has been convicted of driving drunk a third time and, most recently, was arrested in New York City for first-degree rape and forcible compulsion, first-degree sexual abuse of a minor, and assault. A deportation officer reinstated Pino Porras's removal order. Pino Porras expressed fear of returning home to Ecuador, but an asylum officer found insufficient evidence that he would face torture or persecution in Ecuador, eliminating the need for additional proceedings that might lead to withholding of removal.

1

Unsatisfied with the asylum officer's decision, Pino Porras sought review before an Immigration Judge.[1] The IJ advised Pino Porras that if he wished to be represented, his "attorney or representative should appear with [him] at this hearing." A.R. 29. But Pino Porras arrived alone, and the IJ moved forward, noting the lack of "any communication from [his] attorney." A.R. 21. The IJ agreed with the asylum officer and concluded Pino Porras had not established a reasonable fear of state-sponsored persecution or torture. A written order followed that mirrored the IJ's reasoning but suggested, apparently mistakenly, that Pino Porras is an active gang member.

This petition followed. The Attorney General agreed with Pino Porras that the IJ's written decision would benefit from additional explanation and moved to remand. But Pino Porras reversed course and opposed the motion, while still arguing for another round of review. Today, years later, we arrive at the same result and remand the matter.[2]

---

[1] To confer "a more prestigious title," special inquiry officers were renamed "immigration judges" in the 1970s. David A. Martin, Major Issues in Immigration Law 7 (Federal Judicial Center 1987); Immigration Judge, 38 Fed. Reg. 8590 (Apr. 4, 1973). But this new title and attempted "judicialization" of IJs, Martin, *supra*, at 8, has brought understandable confusion as commentators, not to mention citizens, often assume these officers exercise judicial, rather than executive, power. But they hold no power under Article III. IJs are inferior officers of the United States, supervised by the Attorney General and, in turn, the President. *See Duenas v. Garland*, 78 F.4th 1069, 1073 (9th Cir. 2023). Put simply, they exist solely to "perform such duties as the Attorney General shall prescribe." 8 U.S.C. § 1101(b)(4).

[2] The long delay in returning this case to the Justice Department comes from many causes, most predating the presentation of Pino Porras's petition to this Panel. All, however, illustrate the significant costs that accrue from the judiciary's present practice of policing immigration policy. It is hard to see how years of proceedings marked by ping-ponging between judges and administrators about questions ancillary to an alien's lawful presence provides predictability for any party. And it disregards Congress's longstanding view that "the immigration laws of the United States should be enforced

## II.

I would have simply granted the Attorney General's motion, the sort of reasonable request to refine administrative reasoning we regularly accommodate.[3] Although we need not look beyond familiar administrative practices to grant the motion,[4] constitutional principles strengthen the case.

The "executive powers of government" must include an "external power."[5] And "[i]t is an accepted maxim of international law that every sovereign nation has the power, as inherent in sovereignty, and essential to self-preservation, to forbid the entrance of foreigners within its dominions, or to admit them only in such cases and upon such conditions as it may see fit." *Nishimura Ekiu v. United States*, 142 U.S. 651, 659 (1892).[6]

---

vigorously and uniformly." Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, § 115(1), 100 Stat. 3359, 3384.

[3] *See Quinteros v. Att'y Gen.*, 945 F.3d 772, 779 (3d Cir. 2019); *Myrie v. Att'y Gen.*, 855 F.3d 509, 517 (3d Cir. 2017); *Malik v. Att'y Gen.*, 659 F.3d 253, 255 n.1 (3d Cir. 2011); *Ramos-Olivieri v. Att'y Gen.*, 624 F.3d 622, 624 (3d Cir. 2010). Our decisions mirror an IJ's and the BIA's power to reopen a case and reconsider a prior decision. *See* 8 C.F.R. § 1003.23(b); 8 C.F.R. § 1003.2(a).

[4] *See Immigr. & Naturalization Serv. v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam) ("Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands."); *Ivy Sports Med., LLC v. Burwell*, 767 F.3d 81, 86 (D.C. Cir. 2014) ("[A]dministrative agencies are assumed to possess at least some inherent authority to revisit their prior decisions . . . .").

[5] *See* 2 Jonathan Elliot, The Debates in the Several State Conventions on the Adoption of the Federal Constitution 500, 502 (2d ed., Philadelphia, J.B. Lippincott Co. 1836); *see also* Saikrishna B. Prakash & Michael D. Ramsey, *The Executive Power Over Foreign Affairs*, 111 Yale L.J. 231, 254 (2001) ("[T]he Constitution has a simple default rule . . . . Foreign affairs powers not assigned elsewhere belong to the President, by virtue of the President's executive power; while foreign affairs powers specifically allocated elsewhere are not presidential powers.").

[6] *See* Emmerich de Vattel, The Laws of Nations § 94, at 169–70 (Joseph Chitty ed., London, S. Sweet 1834) (1758) ("The sovereign may forbid the entrance of his

So "the foreign affairs powers of a sovereign State" must include authority over immigration. *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 35 (2015) (Thomas, J., concurring in the judgment in part and dissenting in part). And under our constitutional structure, this power is "executed by the executive authority," *Fong Yue Ting v. United States*, 149 U.S. 698, 713 (1893), vested in the President.[7] Little surprise that courts have

territory either to foreigners in general, or in particular cases, or to certain persons, or for certain particular purposes, according as he may think it advantageous to the state."); 1 Robert Phillimore, Commentaries Upon International Law 320 (London, Hodges, Foster, & Co. 3d ed. 1879) (1854) ("[T]he Government of a State may prohibit the entrance of strangers into the country, and may therefore regulate the conditions under which they shall be allowed to remain in it, or may require and compel their departure from it."); 3 Samuel Pufendorf, Of the Law of Nature and Nations ch. 3, §§ 9–10, at 245–46 (London, Basil Kennett trans., 4th ed. 1729) (explaining that although sovereigns may grant "Licence to Foreigners to come and settle amongst them," such privilege is permitted if "they submit to the establish'd Government, and behave themselves with such Prudence and Decency, as to administer no occasion to Factions and Seditions" or "endanger the Natives").

[7] U.S. Const. art. II, § 1, cl. 1; *United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 319–20 (1936) (explaining the President is vested with "plenary and exclusive power . . . as the sole organ of the federal government in the field of international relations").

History confirms the Executive's foreign affairs powers encompass immigration. Drawing from classical sources, the English tradition viewed "the power to deport aliens as executive and located it with the King." *Sessions v. Dimaya*, 584 U.S. 148, 217 (2018) (Thomas, J., dissenting); *see* 1 William Blackstone, Commentaries *259–60 (explaining that "strangers" to the nation are "liable to be sent home whenever the king sees occasion"); John Locke, The Second Treatise of Civil Government §§ 146–47, at 73 (C.H. Wilson & R.B. McCallum eds., Basil Blackwell 1948) (1690) (explaining the power to act toward "foreigners, depending much upon their actions and the variation of designs and interests, must be left in great part to the prudence" of the executive "who ha[s] this power committed to them, to be managed by the best of their skill, for the advantage of the commonwealth"). Thomas Rutherforth agreed, explaining the "external executive power" is not only the "military power" to act "with the common strength or joint force of the society to guard against such injuries as threaten it from without," but also "the power of adjusting the rights of the society in respect of foreigners." 2 Thomas Rutherforth, Institutes of Natural Law ch. 3, § 8, at 275–76 (2d Am. ed., Baltimore, William & Joseph Neal 1832) (1756).

routinely recognized the Executive's broad authority in immigration. *See, e.g.*, *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950) ("The exclusion of aliens is a fundamental act of sovereignty. The right to do so stems not alone from legislative power but is inherent in the executive power to control the foreign affairs of the nation."); *Immigr. & Naturalization Serv. v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) ("[J]udicial deference to the Executive Branch is especially appropriate in the immigration context where officials 'exercise especially sensitive political functions that implicate questions of foreign relations.'" (quoting *Immigr. & Naturalization Serv. v. Abudu*, 485 U.S. 94, 110 (1988))); *Trump v. Vance*, 591 U.S. 786, 826–27 (2020) (Alito, J., dissenting) (explaining that the President's "lead role in foreign relations" "give[s] him broad discretion in matters relating to subjects such as terrorism, trade, and immigration"). So when the Attorney General moves to remand an immigration case, we must routinely defer to the Executive's judgment.

## III.

The majority concludes the IJ's decision is not supported by substantial evidence, but it easily satisfies our "extremely deferential" substantial evidence review. *Chen v. Ashcroft*, 376 F.3d 215, 223 (3d Cir. 2004). Start with the IJ's suggestion that Pino Porras is an active gang member, a harmless error that "did not affect the outcome of the case."[8]

---

[8] The majority notes that "[t]he government has not argued" that the IJ's error was harmless, Maj. Op. 5 n.3, "but even when the government waives harmless error, 'we may still consider the issue,'" *Guadalupe v. Att'y Gen.*, 951 F.3d 161, 167 n.30 (3d Cir. 2020) (quoting *United States v. Davis*, 726 F.3d 434, 445 n.8 (3d Cir. 2013)); *see United States v. Mack*, 229 F.3d 226, 244 (3d Cir. 2000) (Becker, J., concurring) (explaining that "we doubtless have the power" to consider issues not raised by the parties).

*Yuan v. Att'y Gen.*, 642 F.3d 420, 427 (3d Cir. 2011).[9] The IJ determined that Pino Porras did not demonstrate that he feared harm from any government actor, a conclusion amply supported by the record. Pino Porras admitted that he does not "fear being harmed in the future by a public official, or anyone affiliated with the government in Ecuador" and that there is no "connection between" the gang he described and "the police or government in Ecuador." A.R. 63. Indeed, when Pino Porras and his cousin were confronted, the police investigated the matter and arrested the perpetrators.

The IJ's determination is dispositive. Harm alone is not enough because persecution and torture both require a showing that "the government" was "complicit to some degree" in the harm "through either act or omission." *Figueroa v. Att'y Gen.*, 998 F.3d 77, 86 (3d Cir. 2021); *accord Valdiviezo-Galdamez v. Att'y Gen.*, 663 F.3d 582, 592 (3d Cir. 2011). So when an IJ's "determination regarding the involvement of the . . . government [is] not erroneous," any errors with its "separate determination[s]" of other issues are necessarily "harmless." *Figueroa*, 998 F.3d at 86 n.6. Although I would grant the Attorney General's request, I am not persuaded it is necessary, or that much work remains on remand.

### IV.

The majority's second basis for granting the petition is that "the IJ abused her discretion by failing to give Pino Porras a reasonable opportunity to have his counsel

---

[9] We have repeatedly explained that harmless errors are not enough to disturb the Executive's immigration decisions. *See, e.g.*, *Yuan*, 642 F.3d at 427; *Chavez-Chilel v. Att'y Gen.*, 20 F.4th 138, 144 (3d Cir. 2021); *Figueroa v. Att'y Gen.*, 998 F.3d 77, 86 n.5 (3d Cir. 2021).

participate in the hearing," in violation of 8 U.S.C. § 1362. Maj. Op. 5. But no authority, including section 1362, provides for the allowance of counsel at reasonable-fear hearings, so the IJ did not err.[10]

**A.**

I begin by cataloguing the possible sources of any allowance of counsel at reasonable-fear hearings: the Constitution, a statute, or regulation. No one suggests that the Constitution confers such an allowance, and our decisions in *Bonilla v. Sessions*, 891 F.3d 87, 92 (3d Cir. 2018), and *Valarezo-Tirado v. Attorney General*, 21 F.4th 256, 265 (3d Cir. 2021), reject any regulatory authorization. That leaves statute. The majority agrees, reasoning that because section 1362 covers "any removal proceedings" it necessarily includes reasonable-fear hearings.[11] But that is not the best interpretation.

As always, we must understand what matters of interpretation demand. Statutes are "a communal directive,"[12] "the lawmaker's reasoned ordination for the common good" expressed through text.[13] Such reasoned choices are made based on background

---

[10] Lest we confuse matters, the allowance of counsel in this setting refers to the private retention of an attorney, rather than one provided by the United States. Labelling this congressional license to retain an attorney as a "right to counsel" risks confusion with notoriously vague Fifth Amendment notions inapplicable here. That is because, for Pino Porras, "the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law." *Nishimura Ekiu*, 142 U.S. at 660.

[11] Section 1362's allowance is narrow. It merely provides "that like other civil litigants[,] an alien in a [removal] proceeding is allowed to hire a lawyer at his own expense." *Stroe v. Immigr. & Naturalization Serv.*, 256 F.3d 498, 500 (7th Cir. 2001). It "gives him no right to complain if the lawyer he hires is ineffective." *Id.*

[12] Dig. 1.3.1 (Papinian, Definitions 1) (Alan Watson, trans., 1998).

[13] Adrian Vermeule, Common Good Constitutionalism 75 (2022).

principles of the natural law and the common good to which the lawgiver's authority is rightly ordered.[14] To enforce those judgments, we "ascertain the meaning and will of the lawmaking body,"[15] because interpretation "is not a matter of sticking to [a statute's] words, but a matter of grasping their force and tendency."[16] But when looking to the end of the scheme set forth by Congress here, its charge does not encompass an allowance of counsel at reasonable-fear hearings under section 1362.

**B.**

Before interpreting section 1362, a bit of background helps set the stage. "Removal" is a newer phrase in immigration law, which "historically distinguished between aliens who ha[d] 'entered' the United States and aliens [who were] still seeking to enter." *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 349 (2005). These two categories of aliens were subject to "distinct expulsion proceedings, 'deportation' and 'exclusion.'" *Id.* Reflecting this distinction, the first version of section 1362 allowed aliens to retain counsel "[i]n any exclusion or deportation proceedings before a special

---

[14] *Id.* at 80.

[15] William M. Lile et al., Brief Making and the Use of Law Books 337 (3d ed. 1914) (quoted in Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 12 (2012)); *see also* 26 American and English Encyclopedia of Law 520, 597 (David S. Garland & Lucius P. McGehee eds., 2d ed. 1900) ("The object of all interpretation and construction of statutes is to ascertain and carry out the intention of the lawmakers . . . ."); Richard Ekins, The Nature of Legislative Intent 245 (2012) ("[T]he central point of interpreting . . . some legislature's lawmaking act [is] to understand what they have said and done, which means to identify the intentions on which they acted and which they aimed—meant—to make recognizable.").

[16] Dig. 1.3.17 (Celsus, Digest 27) (Alan Watson, trans., 1998); *see Sturges v. Crowninshield*, 17 U.S. 122, 202 (1819) ("[T]he spirit of an instrument . . . is to be respected not less than its letter, yet the spirit is to be collected chiefly from its words.").

8

inquiry officer and in any appeal proceedings before the Attorney General from any such exclusion or deportation proceedings." Immigration and Nationality Act of 1952, Pub. L. No. 82-414, § 292, 66 Stat. 163, 235. That framework remained until 1996 when Congress "abolished the distinction between exclusion and deportation procedures and created a uniform proceeding known as 'removal.'" *Vartelas v. Holder*, 566 U.S. 257, 262 (2012); Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, Div. C, § 304, 110 Stat. 3009-546, 3009-587–97. Accordingly, section 1362 was amended to allow counsel to attend "any removal proceedings before an immigration judge" and "any appeal proceedings before the Attorney General from any such removal proceedings."

Under the current framework, removal proceedings "determin[e] whether an alien may be . . . removed from the United States." 8 U.S.C. § 1229a(a)(3). Some aliens can contest a charge of removability. *See id.* Others, including illegal reentrants who are under a reinstated removal order like Pino Porras, cannot. 8 U.S.C. § 1231(a)(5). Instead, these aliens can seek only a temporary withholding of removal. *See* § 1231(b)(3)(A); 8 C.F.R. § 1208.16. These withholding-only proceedings provide no path for asylum or avenue to challenge "the antecedent question" of "*whether* an alien" may "be removed from the United States." *Johnson v. Guzman Chavez*, 594 U.S. 523, 536 (2021). They only (and at most) prevent the Executive from removing an alien to a particular country for a limited period of time. *Id.* at 537. So even if the alien prevails at withholding-only proceedings, "[t]he removal order is not vacated or otherwise set aside," and the

9

Executive "retains the authority to remove the alien to any other country authorized by . . . statute." *Id.* at 536.

Illegal reentrants under a reinstated removal order, like Pino Porras, are not automatically entitled to participate in withholding-only proceedings. They must first prove a reasonable fear of torture or persecution in the country where they are set to be sent. *See* 8 C.F.R. § 208.31; 8 C.F.R. § 1208.31. If an asylum officer finds a reasonable fear, the matter is referred to an IJ for withholding-only proceedings. § 208.31(e); § 1208.31(e). Or, if the officer deems the claimed fear unreasonable, the alien may challenge that determination at a hearing before an IJ. § 208.31(g); § 1208.31(g). Only if the IJ reverses the asylum officer can the alien participate in withholding-only proceedings. § 1208.31(g)(2). In any event, the reasonable-fear hearing merely considers whether a reinstated removal order may be immediately executed or should be delayed for additional country-specific proceedings. *See* § 1208.31(g)(2)(i).

### C.

Against this context, text makes clear that reasonable-fear hearings are not removal proceedings, leaving no basis for an allowance of counsel.

Section 1229a provides that removal proceedings "determin[e] whether an alien may be . . . removed from the United States." § 1229a(a)(3). And section 1229a contains "the sole and exclusive procedure" for removal proceedings "[u]nless otherwise specified" elsewhere in chapter twelve of title eight of the United States Code. *Id.* Such specification is made in section 1228, which creates "special removal proceedings" for the expedited removal of aliens convicted of aggravated felonies. 8 U.S.C. § 1228(a)(1).

10

But neither section 1229a nor section 1228 address withholding-only proceedings or the precursor reasonable-fear process. *See Guzman Chavez*, 594 U.S. at 531. That is because a removal order is antecedent to both a withholding-only proceeding and reasonable-fear hearing and thus "remains in full force" throughout. *Id.* at 536. And recall that reasonable-fear hearings have no statutory home and live only in regulations adopted in 1999. *See* Regulations Concerning the Convention Against Torture, 64 Fed. Reg. 8478, 8485 (Feb. 19, 1999). It is hard to see how a process unknown to Congress in 1996 can be a removal proceeding.

Unsurprisingly, the Supreme Court's decisions confirm what the text makes clear. In *Nasrallah v. Barr*, the Court held that an order denying withholding-only relief "is distinct from a final order of removal and does not affect the validity of the final order of removal." 590 U.S. 573, 583 (2020). And in *Johnson v. Guzman Chavez*, the Court explained that "an alien subject to a reinstated order of removal will not have any removal proceedings," 594 U.S. at 531, because illegal reentrants under a reinstated removal order have already been "ordered removed" and reinstated removal orders are "administratively final," *id.* at 533 (quoting § 1231(a)(1)(A)–(B)). So although *Nasrallah* and *Guzman Chavez* did not address section 1362, they confirm "important principles applicable to this case." *Arostegui-Maldonado v. Garland*, 75 F.4th 1132, 1150 (10th Cir. 2023) (Tymkovich, J., concurring).

The majority responds that because section 1362 covers "*any* removal proceedings," § 1362 (emphasis added), it includes reasonable-fear hearings. That does not follow. "Any" simply suggests multiple types of removal proceedings, consistent

11

with the distinct removal processes in sections 1229a and 1228.[17] But "any" says nothing about the meaning of "removal" and what distinguishes "removal proceedings" from other types of proceedings.[18] Pino Porras requested a hearing about *where* he will be removed, or *which* country will receive him. But removal determines *whether* an alien may be removed. That decision is set and not subject to judicial revision. So no further removal proceedings are possible, and no allowance of counsel is provided under section 1362.

*  *  *

Granting the petition for review requires declining an ordinary request for remand and ignoring determinative parts of the IJ's opinion. Seeing no reason to do either or depart from the best meaning of section 1362, I respectfully dissent.

---

[17] Section 1362 allows for attorney representation "[i]n any removal proceedings *before an immigration judge*." § 1362 (emphasis added). So section 1362 applies in section 1228 proceedings when, but only when, an IJ is presiding. That matters because IJs seldom preside over section 1228(b) removal proceedings. *See* 8 C.F.R. § 238.1(a).

[18] The majority's reliance on a panel opinion from the Ninth Circuit is unpersuasive. *See Orozco-Lopez v. Garland*, 11 F.4th 764 (9th Cir. 2021). Like the majority here, that panel rested its decision almost entirely on section 1362's use of "any," which is not probative of whether reasonable-fear hearings are removal proceedings. The Ninth Circuit panel also failed to consider the significance of *Nasrallah* and *Guzman Chavez*.